## No. 11,307.

### HOWRY *v.* SIGEL-CAMPION LIVESTOCK COMMISSION CO.,
ET AL.

Decided October 4, 1926.

## Action in replevin.   Judgment for plaintiff.

### *Affirmed.*

1. PLEADING—*Replevin—Complaint.* The contention in a replevin action that plaintiff's pleadings are insufficient, overruled.

2. CHATTEL MORTGAGE—*Failure to Read.* One who signs a chattel mortgage may not deny its contents on the ground that he did not read it.

3. ESTOPPEL—*Chattel Mortgage.* One who signs a chattel mortgage as secretary of a corporation is estopped from asserting ownership of a part of the mortgaged property or from denying any statement of fact contained in the mortgage.

4. TRIAL—*Opening and Closing.* The party on whom rests the burden of the issues has the right to open and close.
   In a replevin action, as between plaintiff and an intervener, it is held that the former had the right to open and close.

5. WITNESSES—*Cross Examination Under the Statute.* There was no error in refusing an intervener an opportunity to cross examine the president of plaintiff corporation under the statute, where such cross examination would have been directed to matters wholly irrelevant to the issues.

6. CHATTEL MORTGAGE—*Foreclosure—Description of Property.* In a replevin action involving a chattel mortgage on cattle, the contention that there was no evidence that the cattle taken were the ones described in the mortgage, overruled.

7. EVIDENCE—*Stock Brand.* A certified copy of a stock brand is prima facie, but not conclusive, evidence of ownership of stock bearing the brand.

8. CHATTEL MORTGAGE—*Ownership of Property—Burden of Proof.* An intervener who claims a part of the property taken under a chattel mortgage in a replevin action, has the burden of establishing his claim.

*Error to the District Court of Garfield County, Hon. John T. Shumate, Judge.*

Mr. JOHN R. WOLFF, for plaintiff in error.

Mr. JOHN L. NOONAN, Mr. W. F. NOONAN, for defendants in error.

*Department One.*

MR. JUSTICE ADAMS delivered the opinion of the court.

ACTION in replevin, brought by the Sigel-Campion Livestock Commission Company, against the Double X Ranch Company and John H. Howry, defendants, to recover cattle alleged to be covered by a chattel mortgage to plaintiff; intervention by Grace H. Howry, wife of defendant Howry; directed judgment and verdict for plaintiff; intervener brings the case here on writ of error. The parties are hereinafter referred to as aligned in the trial court.

Defendants made no answer to the pleadings of either the plaintiff or intervener, which eliminates consideration of the respective rights between plaintiff and defendants and between intervener and defendants, except as they may bear upon the direct issues between plaintiff and intervener. The matter to be decided in this court is the dispute between the two last named litigants.

Plaintiff, the Sigel-Campion Livestock Commission Company, lends money on livestock security. The defendant, the Double X Ranch Company is a corporation controlled by the Howry family; Mr. and Mrs. Howry are its chief stockholders; he is president and she is secretary; they, with another member of the family, are its sole directors.

Plaintiff's claim in replevin is based on a chattel mortgage dated February 3, 1920, executed by the defendant

company to plaintiff, to secure its corporate notes to plaintiff, amounting to $9,600. The notes and mortgage were signed upon behalf of the corporation by defendant Howry as its president, and by his wife, the intervener, as secretary thereof. They were executed pursuant to authority of the board of directors of defendant company, the husband and wife, as directors, both agreeing thereto, with no dissenting vote.

We shall assume from the pleadings and proof, the genuineness of the debt, the mortgage given to secure the same, and conditions broken by the mortgagee, entitling the plaintiff mortgagee to foreclose. The controlling factor in the case is whether the mortgage included 29 head of Holstein cows and calves, alleged by plaintiff to belong to the mortgagor and to be covered by the mortgage, and on the other hand which are claimed by intervener to be her sole and separate property.

The mortgage purported to cover 234 head of mixed cattle "* * * being all and intended to cover and include all of the cattle of this kind, description and brand, owned by the said party of the first part (the mortgagor) and wherever situate, together with all the natural increase thereto. All of the above cattle carry the following brand: 2T2 and this mortgage shall extend to and cover and include said brand * * *"

Upon the one question of the physical description of the chattels in controversy, the admissions of the parties are such that we need to speak only of the several breeds of cattle and the 2T2 brand. Our reference to the cattle will be taken to include their increase. The mortgage described the cattle as being in the possession of the mortgagor company at its ranch in Garfield county, Colorado. The instrument contained full covenants of warranty and of right to mortgage the chattels described therein.

The defendant J. H. Howry made the following affidavit upon the back of the mortgage: "To obtain the

within credit, J. H. Howry, being first duly sworn, says that he is the president of said the Double X Ranch Company mortgagor, and that said mortgagor is in possession of, and is the owner of, the property described and included in the within instrument of writing, and that said mortgagor has full power to sell or mortgage the same, and give clear title thereto; and there are no chattel mortgages, liens or claims of any kind upon or against said property.''

The following quotation from intervener's replication to plaintiff's answer to her petition in intervention, epitomizes a special defense interposed by intervener to the above corporate chattel mortgage, in the execution of which she, as secretary, took part: ''That said chattel mortgage was prepared by the attorney for the plaintiff and that because said chattel mortgage was a renewal of a previous chattel mortgage given by defendants to interveners, this intervener signed said chattel mortgage without reading such description contained therein and without knowledge of the fact that the said description of defendant's herd of cattle therein omitted the words 'Hereford and Shorthorn,' but that said mortgage was merely a renewal of a previous mortgage clearly describing said cattle as mixed Hereford and Shorthorn cattle, which the plaintiff well knew and understood at the time of its execution.''

Intervener sought by the above to limit the operation of the mortgage to two mixed breeds of cattle, instead of three, and thus to exclude from its terms all Holstein cows and calves, which she claimed were hers. Plaintiff asserted, on the other hand, that the mortgage was broad enough to cover mixed breeds of any variety. The court agreed with plaintiff. Intervener offered proof in support of the above allegation, to confine the mortgage to Herefords and Shorthorns, which the court rejected.

While the mortgage purported to cover 234 head of mixed cattle, plaintiff gathered at the foreclosure only about 130. This tremendous shortage was due partly to

alleged misrepresentation by the mortgagor as to the actual number of cattle that it owned, and partly to losses alleged to have resulted from the mortgagor's neglect, causing the death of some from starvation and exposure, and the unaccounted for disappearance of others. If the 29 head claimed by intervener be further subtracted, it would leave about 101 head actually taken by plaintiff under the foreclosure. Plaintiff pleaded and proved that there were not enough cattle to satisfy the mortgage debt. Intervener offered no evidence to contradict the testimony about the shortage of cattle, nor as to the amounts received by plaintiff for those sold under the mortgage foreclosure. $1,024.67 was realized from the sale of the Holsteins, and $4,541.36 from the sale of the others, a total of $5,566.03, leaving an unpaid deficit of $4,033.97 under the $9,600 mortgage notes, besides interest.

Plaintiff took default against defendants, and at the trial supported its case against defendants and intervener with proof. Intervener was cross-examined by plaintiff's counsel under the statute, C. L. 1921, section 6570, but the evidence that she offered upon her own behalf was rejected by the trial court. Whatever other facts are necessary to an understanding of the case will be stated in the opinion.

The points for discussion, generally classified, are: (1) The sufficiency of plaintiff's pleadings; (2) the adequacy of intervener's above-quoted special defense, involving the admission of parol evidence in disparagement of a written instrument, and estoppel; (3) privilege as between plaintiff and intervener, to open and close; (4) right to cross-examine adverse party under statute, C. L. section 6570; (5) plaintiff's evidence as to identity of cattle; and (6) effect of stock brands as evidence.

1. Plaintiff's complaint against defendant contained the usual averments in replevin; no objection to it by defendants. Plaintiff's answer to intervener's petition

sets forth in detail the execution of the chattel mortgage, the facts upon which plaintiff's rights were based, and the mortgagor's breach of the conditions of the mortgage. The answer also says: "The plaintiff reiterates that it is now the owner of and entitled to the immediate and exclusive possession of all of said cattle." Intervener's point that plaintiff's allegations in this regard are insufficient is not well taken.

2. Intervener's special defense, quoted verbatim in above statement of the facts, is not good. It would be an unwarranted reflection upon the legal profession to assume that a document should be an object of suspicion merely because it was prepared by plaintiff's lawyer, and in any event, the court is not concerned with mere suspicions. Furthermore, it is immaterial whether the mortgage was a renewal or not, for its genuineness and due execution is admitted, the bona fides of the debt is unquestioned, and it is a matter of every day occurrence to renew debts on enlarged security. The idea of counsel for intervener is to apply the general rule, applicable in proper cases, that the surrounding circumstances under which an instrument has been executed may be shown. Let us say, for the nonce, that this is true; but if under the guise of this rule, one may explain away a contract by saying that words of unlimited general description—234 head of mixed cattle—shall be limited to only cattle of particular descriptions or breeds —Herefords and Shorthorns—the effect of which is to reduce the number mortgaged—why, then, may one not be permitted to explain away the mortgage altogether by declaring, if the exigencies so require, that the words, "all cattle," must be limited to only a few old steers, or that the mortgage does not include *any* of the above breeds, or that 234 means only 100 head of cattle, or indeed to whittle the instrument down to nothing at all, and thus to do away with a signed paper that is obnoxious to intervener's present will? It is only a

question of degree. The 2T2 brand was placed indiscriminately on cattle of all breeds. To follow intervener's desire by permitting such testimony, would violate the rule against oral evidence contradicting the terms of a written instrument; it would let a party say, as soon as the ink dried on his signature, that the contract did not mean what it said—or that it meant nothing —which cannot be allowed. We further observe that the last two mortgages executed by the mortgagor contain an enlargement of the description in the previous mortgages, by removing the restrictive words as to the breeds of cattle mortgaged. Plaintiff's idea would result in showing by parol that an obvious present enlargement of description of the chattels included, was in fact intended to continue a previous limitation thereon, which would violate the same rule. The intent of the parties is merged in the last instrument.

While there is no plea of fraud, duress, mutual mistake, or other sufficient defense, legal or equitable, to the signing of the mortgage by intervener as secretary, or of her action as director in approving of its execution, nevertheless, she denies notice of its contents upon the ground that she did not read it. That this is not a good defense is too well settled to require citation of authority. She should have read it and it will be presumed that she did so.

Our conclusion as to the chattel mortgage in question is that intervener cannot plead the above special defense; that she is estopped to deny that the mortgage was intended to and did include 234 head of cattle of the 2T2 brand, Holsteins or otherwise, as well as the brand itself; and that she is further estopped to deny any statement of fact contained in the mortgage, or in the oath of the president of the company endorsed on the mortgage, all of which had her full approval.

3. Coming now to the trial—plaintiff and intervener each claimed the right to open and close; it was awarded to plaintiff, to which intervener excepts.

The party on whom rests the burden of the issues has the right to open and close. Code, 1921, section 205; *Fairbanks v. Irwin,* 15 Colo. 366, 25 Pac. 701; *Teller v. Ferguson,* 24 Colo. 432, 51 Pac. 429; *Macdermid v. Watkins,* 41 Colo. 231, 92 Pac. 701; *Mastin v. Bartholomew,* 41 Colo. 328, 92 Pac. 682; *Knowlton v. Knight-Campbell Music Co.,* 59 Colo. 51, 147 Pac. 330; *Little v. Little,* 23 Colo. App. 518, 130 Pac. 1022; 26 R. C. L. section 22, p. 1023; 38 Cyc. 1302; 15 Ency. Pl. & Pr. 183.

Upon whom does the burden rest? Plaintiff says that it is upon him, citing *Hall v. Johnson,* 21 Colo. 415, 42 Pac. 660; *Dwelle v. Plummer,* 5 Colo. App. 113, 37 Pac. 947, and other cases. Intervener says that it is upon her, citing *Benish v. Jones,* 68 Colo. 484, 190 Pac. 538, and other cases. They are both right from the standpoint of their several relations to defendants—that each, in order to recover from defendants, must prove his case against them, but this does not solve the question between plaintiff and intervener, as to which of them has the right to open and close. Cases between plaintiff and defendant, or between intervener and defendant, afford us only a starting point. Plaintiff began the action to obtain certain property from defendant; if there had been no intervention, with the burden on plaintiff, he would have had the right to open and close. In general, an intervener must take the suit as he finds it. 11 Ency. Pl. & Pr. 509. And while intervener must establish her claim to 29 cattle out of the lot, nevertheless it is provided in section 24 of the 1921 Code: "The court shall determine upon the intervention at the same time the action is decided, subject to the power of the court to determine the order and mode of trial of the several issues." Assuming the right to open and close to be a substantial right and an important advantage, it would seem illogical to say, because of the advent of an intervener in the arena, thus adding to a plaintiff's burdens by increasing the number of his antagonists, each ap-

proaching him from different angles, that the trial court abused its discretion in not depriving this plaintiff of its original advantage, and in failing to award the coveted privilege to the latest comer, and to thus give the latter the right to dictate the order of battle. Plaintiff had the right to open and close.

4. Intervener's assignment of error that her counsel was not permitted to cross-examine the president and general manager of plaintiff corporation under the statute—C. L. 1921, section 6570—is not good, since all that counsel wanted to cross-examine the witness about was as to matters which we have held were wholly irrelevant to the issues.

5. Relating to the evidence—counsel for intervener asserts that there was no evidence that the cattle taken in foreclosure were the same ones that were mortgaged. He has overlooked the testimony of the witness Gallagher, who was sent by plaintiff company to the Double X ranch to get the cattle. He testified that he went there and that he "foreclosed on these cattle under the mortgage." He also described them by their 2T2 brand, all of them being so branded and none others taken. It is not necessary to relate his evidence in detail, nor that of the witness Cullen—a nearby ranchman—who corroborated him in many essential particulars; nor that of Campion, president and general manager of the plaintiff company. It is not for intervener to say that there were not 234 head of 2T2 cattle on the ranch when the mortgage was given. She joined in a contrary statement six times at least, as we remark elsewhere in this opinion.

6. The effect of the 2T2 brand is discussed, with opposite conclusions, by counsel for each side. Intervener offered in evidence a certified copy of the stock brand in her name. It was prima facie evidence of ownership of the cattle so branded. C. L. 1921, section 3126. Such evidence is not conclusive—3 C. J. 42—for it would result in a strange paralysis of the livestock market, if,

after the brand had been burned on the hide of an animal, such brand should be taken as a conclusive presumption of ownership. If it were so, no branded animal could ever be sold. No such absurdity exists in the law. But in the instant case, intervener consented six times to the mortgaging to plaintiff of cattle so branded, as well as the brand, once in the mortgage foreclosed, besides five previous mortgages, of which the one foreclosed was a renewal. She herself offered the first five in evidence. So when it is said that her ownership of the brand creates a prima facie presumption in her favor, it may also be said with equal truth, on account of the representations to plaintiff by the mortgagor company, in which she joined as secretary and director, that conclusively, in so far as any claim of hers against plaintiff may be concerned, 234 head of cattle so branded were rightfully mortgaged to plaintiff. Plaintiff took only 130 under the foreclosure; the shortage unquestionably existed. Intervener claimed 29 of the 130 taken by plaintiff, all bearing the mortgaged brand. Intervener was the proponent and the burden of proof was upon her to show that the 29 cattle were hers; the only way that she tried to prove it was first, by the attempted distinction in the breeds of cattle, which we have held she could not do, and second, by the presumption of ownership on account of the brand, overlooking, however, the fact that the presumption was no longer in her favor, but against her, by reason of her repeated acquiescence in the mortgage. Just how her counsel intended to rebut the presumption of her own evidence, we do not know, nor do we need to advance an opinion upon such self-rebuttal if it had been produced. As far as any definite tender of proof by intervener indicates, she had nothing to offer except that which was untenable, so, whatever informality there may have been in the manner of the dismissal of her

intervention by the trial court, it was right. The judgment is accordingly affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE BURKE concur.