STATE v. K. BLENDON FERRELL.

(Filed 30 March, 1932.)

1. **Homicide G a—Evidence in this case held sufficient to be submitted to the jury.**

   Where in a criminal prosecution the State's evidence tends to show that the defendant willingly entered into the fight with the deceased and killed him with a deadly weapon, a knife, the defendant's motion as of nonsuit is properly refused, and a verdict of manslaughter will be affirmed on appeal. C. S., 4643.

2. **Criminal Law G c—Requested instructions as to weight of character evidence held properly refused in this case.**

   Where the defendant in a criminal action puts his character in evidence and testifies in his own behalf, testimony of his good character may be received in evidence both as bearing on his credibility as a witness and as substantive evidence on the issue of his guilt, but a request for an instruction that the "law presumes that a man of good character is not only less likely to commit a crime than a man of bad character, but also that a man of good character is more truthful and less likely to testify falsely under oath than a man whose character is not good" is *held* properly refused, the requested instruction going beyond that to which the defendant was entitled.

APPEAL by defendant from *Daniels, J.,* and a jury, at November Term, 1931, of DURHAM. No error.

The defendant was convicted of manslaughter and the judgment was that he be confined in the State's prison for a period of not less than two nor more than three years. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*McLendon & Hedrick for defendant.*

CLARKSON, J. The defendant, at the close of the State's evidence and at the close of all the evidence made motions "to dismiss the action or for judgment of nonsuit." C. S., 4643. These motions were overruled by the court below and in this we can see no error.

It was in evidence that the defendant entered into the fight willingly with one James Quick, and cut him with a knife, which caused his death.

Robert Davis, a witness for the State, testified, in part: "When James Quick was giving Mr. Ferrell the cigarette he did not have the bricks

in his hand. Mr. Ferrell had something in his hands then. The next thing I knew Quick was coming in the house hollering. I went out there, and he come to the house and then to the back door, and he was bleeding like the water spigot was turned on. . . . He was cut from under his ear and clean around to his neck, right out to the tip end of his chin. Quick came running in the house hollering to me, and said 'Bob come here, I am cut to death.' When I come out of the door Mr. Ferrell was half way to the bridge coming this way. I saw James at the hospital about thirty-five or forty minutes after I put him in the truck or automobile. He was dead."

Ed Roberts, a witness for the State, testified, in part: "I saw Ferrell and James Quick at that time in the yard of Robert Davis. When I come along there, I heard some cursing, and looked and I saw that it was Mr. Ferrell, and I heard him say, 'God damn you I will cut you,' there was another white man out there and two colored fellows. They were all there together. At the time I heard Mr. Ferrell cursing, I did not notice whether he had anything in his hand or not. . . . I run to the front door, and I said what is the matter out here, and the children said a white man is cutting a darkey to pieces, and when I got down there they had taken him away."

L. B. Henderson, a witness for the State, testified, in part: "I know where Robert Davis lives, the house that this cutting took place in. As I passed Mr. Ferrell and Mr. Quick this afternoon, they were all arguing there in the street and yard, and I told Mr. Ferrell if I was he I would go away and keep out of trouble, and when I got away about as far as from here to the back end of the courtroom, I heard a man say that he was cut, and I looked back and saw him going up the steps on his knees and hands. I went down there. When I got back Mr. Ferrell was on his truck. He had started off to leave. When I passed they were arguing. I did not see any weapon. When I got back down there his neck was cut."

In *S. v. Miller,* 197 N. C., at p. 448, the following is stated: "When on a trial for homicide, a killing with a deadly weapon is admitted or established by the evidence, the law raises two—and only two—presumptions against the slayer: first, that the killing was unlawful; and, second, that it was done with malice; and an unlawful killing with malice is murder in the second degree. *S. v. Walker,* 193 N. C., 489; 137 S. E., 429; *S. v. Fowler,* 151 N. C., 731, 66 S. E., 567."

In *S. v. Parker,* 198 N. C., at p. 634, is the following: "True, he said she was trying to cut him; but he was the aggressor; he not only entered into the combat willingly; he provoked it. The homicide according to his testimony was certainly nothing less than manslaughter. *S. v. Bald-*

win, 152 N. C., 822; *S. v. Kennedy,* 169 N. C., 288; *S. v. Merrick,* 171 N. C., 788; *S. v. Evans,* 177 N. C., 564."

From a careful reading of the charge, we think the court below stated the law applicable to the facts, in fact read decisions of this Court on the law relative to the facts in this case.

The main contention of defendant is the refusal of the court below to give the following instruction: "The defendant, gentlemen of the jury, has offered his character in evidence, and you are to take this into consideration in reaching your verdict. You are to consider this not only in passing upon his guilt or innocence, but also in passing upon his credibility as a witness. The law presumes that a man of good character is not only less likely to commit a crime than a man with a bad character, but also that a man of good character is more truthful and less likely to testify falsely under oath than a man whose character is not good."

In *S. v. Whaley,* 191 N. C., at p. 391-2, we find: "Evidence of the defendant's good character is put in issue and when he also testifies in his own behalf, is competent (1) as bearing upon the credibility of his testimony and (2) as touching the question of his guilt or innocence. *S. v. Cloninger,* 149 N. C., 567. Speaking to the subject in *S. v. Moore,* 185 N. C., 637, *Hoke, J.,* said: 'It is fully recognized in this jurisdiction that in an indictment for crime, a defendant may offer evidence of his good character and have same considered as substantive testimony on the issue of his guilt or innocence. And where in such case a defendant has testified in his own behalf and evidence of his good character is received from him, it may be considered both as affecting the credibility of his testimony and as substantive evidence on the issue.' "

The defendant cites the above well settled law in support of his contention. But the prayer for instruction goes beyond the law above stated. It says: *"The law presumes that a man of good character is not only less likely to commit a crime than a man with a bad character, but also that a man of good character is more truthful and less likely to testify falsely under oath than a man whose character is not good."*

In *S. v. Rose,* 200 N. C., at pp. 344-5, the following is said: "In its charge the court had instructed the jury that if they found the facts to be as the evidence tended to show, beyond a reasonable doubt, they should return a verdict of guilty. Having correctly imposed upon the State the burden of proof beyond a reasonable doubt, the court declined to instruct the jury that defendant was presumed to be innocent. While the court might have well complied with the request of defendant's counsel, under the authority of *S. v. Boswell,* 194 N. C., 260, 139 S. E., 374, we cannot hold that the refusal to give the instruction as requested

was error for which the defendant is entitled to a new trial, as a matter of law." *S. v. Herring,* 201 N. C., at p. 549.

"The courts below ordinarily in the charge to the jury apply the 'presumption of innocence' in the interest of life and liberty, and enlarge on 'reasonable doubt,' 'fully satisfied' or 'satisfied to a moral certainty.' *S. v. Sigmon,* 190 N. C., 687-8; *S. v. Tucker,* 190 N. C., 709; *S. v. Walker,* 193 N. C., at p. 491. When instructions are prayed as to 'presumption of innocence' and to enlarge on 'reasonable doubt' it is in the sound discretion of the court below to grant the prayer." *S. v. Herring, supra,* at p. 551.

We know of no such presumption as contended for in defendant's prayer, and the court below did not commit error in refusing to give it. On cross-examination the defendant testified, in part: "That was ten years ago that I was up in court for liquor. I am thirty-one years old. I was up there for violating the liquor law in 1922, and that is the time I went to the road, or something like that. . . . In 1924, in the recorder's court, I was up about some whiskey, and a colored fellow. I paid a fine of $300. . . . I think I was up in recorder's court in 1923, something like that. It was just an ordinary fight with George Tilley. I will not deny that I was up in recorder's court for a fight with my brother. I was charged with cutting a Negro and assaulting him. Q. What were you fighting about, and where did that take place? What were you given for that? A. Twelve months." We think the defendant has no cause to complain—the court below was merciful. From a careful review of the entire record, we find

No error.