No. 13,313.

Saiz et al. *v.* The People.

(25 P. [2d] 1114)

Decided September 18, 1933. Rehearing denied October 16, 1933.

Mr. J. Emery Chilton, for plaintiffs in error.

Mr. Paul P. Prosser, Attorney General, Mr. Charles H. Queary, Assistant, for the people.

*En Banc.*

Mr. Justice Hilliard delivered the opinion of the court.

PLAINTIFFS in error, to whom we shall refer as defendants, were charged with the murder of one George Arnold. Upon a verdict of guilty, fixing the penalty at death, judgment was entered.

It appears that about 9:45 at night, September 10, 1932, Arnold, 74, a farmer, was found dead in his house, the discovery being by a son on his return from Denver; that the deceased had been beaten on the head with an implement of such character and weight that severe wounds, and perhaps fracture of the skull, resulted; that the clothing of deceased had been saturated with kerosene, as had the bedding on a bed beside which the body lay, and ignited, and, with the exception of that portion of the clothing immediately between the body and the floor, consumed; and that the body was charred, only a part of the face, sufficient for identification, and the back in contact with the floor, were free from serious burns. Expert testimony was to the effect that the indicated blows and burns were the cause of death.

Three assignments of error are urged: (1) Change of venue should have been granted; (2) a written confession was improperly received; and (3) the verdict was contrary to the evidence, and the result of passion and prejudice.

The application for change of venue, which was to the general effect that the feeling among the people of the county was such that defendants could not have a fair trial there, was not verified or supported, and bore only counsel's signature. Considering the record, we think it may not be said the court abused its discretion. That is the test. *Patton v. People,* 74 Colo. 322, 221 Pac. 1086; *Giacomozzo v. People,* 72 Colo. 13, 209 Pac. 798; *Power v. People,* 17 Colo. 178, 28 Pac. 1121.

The defendants signed a written confession to the purport that about four o'clock of the day of the homicide they met at the house of defendant Saiz and planned to rob Arnold, to whose home they repaired about 6:30; that while they and the deceased stood by the

porch, defendant Vigil asked for twenty-five cents he said Arnold's son owed him; that Arnold went into the house, presently returned and paid the sum demanded, and after talking awhile turned to go into the house again, when Vigil seized him around the body, and, aided by the other defendants, carried him into a bedroom and threw him on the floor; that while Saiz and Montoya held the deceased to the floor Vigil struck him on the head with a revolver he took from beneath a pillow on the bed; that Arnold was stunned for a time, and on showing signs of revival Vigil hit him again with the revolver, after which he did not move. In the struggle Arnold's pocketbook had fallen from his pocket, and in it the defendants found one dollar in small change. This they divided, to Saiz thirty cents, and to Vigil and Montoya each thirty-five cents. Defendants were now convinced of Arnold's death and moved the body to a point on the floor, near the edge of the bed. Saiz brought from the kitchen an oil can, from which Vigil poured kerosene over the bed and one of them poured some on the body. Vigil set fire to the oil-soaked bedding and Saiz to the clothing of the deceased, and the defendants searched the house for more money, but found none. They then went away, Vigil and Saiz to the latter's home, where at 7:30 they went to bed, and Montoya to bed at his home, neither far distant. They said that at the time they planned the robbery, they contemplated that after consummation they would burn the house. For some unknown reason, perhaps because the windows and doors were closed, the fire was without material damage other than as related. The confession was verified before a justice of the peace.

After venue and the fact of death as the result of violence had been established, a writing, bearing the signature of defendants, was produced and marked, and identified by the sheriff as the confession. Counsel for defendants, claiming duress in its procurement, asked that the court conduct a hearing out of the presence of the jury on the issue of whether what appeared to be a confession

had been obtained under circumstances which should bar its admission. The request was granted. Counsel, assuming the burden, conducted a searching cross-examination of sheriff Templeton, undersheriff Cox, deputy sheriff Williams, and the then deputy district attorney, J. Paul Hill, officers who said they were present when the confession was made, and followed with the testimony of the three defendants. Some conflict appeared, but at the conclusion of the "trial within the trial" the court found that the charge of threats and duress had not been sustained, and ordered the trial to proceed in order.

In this preliminary examination, the sheriff and his deputies testified that in the afternoon of the day following the tragedy, the sheriff called defendants Vigil and Saiz from cells in the county jail where they had been held since the night before and examined them separately, and indulging neither threats nor duress asked about the facts of the death of Arnold, and after only slight parleying, each confessed general guilt, one relating what he and the other had done, and the other, telling the same details, brought to the attention of the officers the name of Montoya, not theretofore arrested, saying that he was a participant. Montoya was apprehended, and while at first he denied guilt, when confronted with the other defendants and learning what they had said, confessed as they had. The three then told the story in collaboration, each offering suggestions as to details, the whole not differing materially from the earlier recitals by Vigil and Saiz. To the deputy district attorney, who was then called, the defendants again related the circumstances of the alleged crime, not essentially varying, as the sheriff and his officers testified, from what had been told them. In the light of the information in hand, and in the presence of defendants, the prosecuting attorney dictated to a stenographer the sum of the incidents appearing. As the dictation proceeded the attorney asked defendants to offer correction as to what he was saying, and occasionally they availed themselves of the sugges-

tion. Both the sheriff and attorney testified that throughout the whole matter they warned defendants of the importance and potential consequences of the statements they were making. All the officers testified that after the dictated notes had been transcribed, defendants read the full text, corrected it in minor particulars, and freely signed it.

Defendants testified that they did not confess; that the sheriff asked them to sign a paper which had been previously prepared without their procurement or knowledge, and which they were not allowed to read or have read to them; that the sheriff exhibited a revolver and threatened that unless they signed the prepared matter he would strike them as the deceased had been struck, and one of them said a deputy sheriff slapped him twice; that they did not know what they were signing, but in fear signed as directed by the sheriff. The defendants were respectively 18, 18 and 19 years of age, all had attended public school, and one had finished the fourth grade, one the fifth and the other the ninth. They could read and write and apparently were intelligent.

The trial was then resumed before the jury. The same witnesses, including defendants, testified to the things covered in the preliminary trial, and in the main the testimony of none varied from that previously given. The stenographer, a Mrs. Russell, an employee of the Adams county court, who took the dictation and transcribed it, not previously called, testified that defendants were present as the prosecuting attorney dictated, and made suggestions from time to time; that when the transcript was ready the defendants read it, caused some unimportant errors to be corrected, and then signed as appears. Over objection the confession was then received.

Primarily, the question of whether the confession was voluntary, and not improperly induced, rested with the trial court. *Moya v. People,* 88 Colo. 139, 293 Pac. 335; *Mitchell v. People,* 76 Colo. 346, 232 Pac. 685; *Fincher v. People,* 26 Colo. 169, 56 Pac. 902. We have examined the

record of the testimony, given consideration to every circumstance disclosed, and, appraising with judgment mercifully disposed, find ourselves unable to conclude that the court abused its discretion.

When we reflect that in addition to the written confession, supported as to integrity of execution by witnesses as indicated, the same and other witnesses testified to oral confessions by the several defendants, it is obvious that the verdict was not contrary to the evidence. There was testimony that one of the defendants went into another room of the Arnold house and produced the revolver they said had been used, and from the place where they admitted they had hidden it; that they told of hiding Arnold's pocketbook, and subsequent to the written confession one of the defendants led the officers to a place by the roadside where the pocketbook was found as they said it would be. In a word, there is much in the record that the jury may have regarded as corroborative of the written and oral confession, as well as confounding to the denials of defendants as witnesses at the trial. A jury of twelve, duly impaneled, none of whom was challenged, heard the testimony, and guided by instructions to which no objections were urged, and seemingly sound, found these unhappy defendants guilty. That was the office of the jury and its responsibility. Nothing in the record indicates passion or prejudice.

Throughout the proceeding the presiding judge was mindful of the rights of the defendants. He postponed the trial from the time of first setting to a date more agreeable to them. In the preliminary investigation he allowed defendants much latitude, as they undertook to show their confession had been brought about through duress, on occasion over the objection and protest of the district attorney. The judge was careful to keep well within his province as the trial progressed. When rulings were necessary they were made without suggestive comment.

We are concluded by an errorless record, and affirm-

ance of the judgment is ordered. And let it be further ordered that execution occur during the week ending Saturday, November 18, 1933.