## No. 15,153.

### CAHILL *v.* THE PEOPLE.
(137 P. [2d] 673)

Decided March 15, 1943.   Rehearing denied May 10, 1943.

Mr. A. R. MORRISON, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, assistant, for the people.

*En Banc.*

MR. JUSTICE KNOUS delivered the opinion of the court.

PLAINTIFF in error, to whom we hereinafter refer as defendant, was found guilty by a jury in the district court of Teller county, of the larceny of fourteen head of neat cattle of the personal property of one Sumner Osborne, in violation of section 93, chapter 48, '35 C.S.A., and he is here seeking a reversal of the judgment of conviction which followed such verdict. The evidence of the people, which in the particulars hereinafter set out is uncontroverted, disclosed that on the morning of October 23, 1941, defendant and his brother John Cahill went to what is referred to in the evidence as the Sumner Osborne ranch, situate in Teller county, and drove fourteen head of cattle which were grazing thereon to a small pasture near defendant's ranch in the neighborhood of Divide. There was no evidence that the Cahills had or claimed any ownership in, or right of possession to, such livestock. Eleven of these cattle were branded with a backward P inverted U brand and the remaining three with a K Bar backward C brand. Previous to 1937 the first brand was duly recorded in the name of Earl Osborne—deceased in 1940—a brother of Sumner Osborne; by reason, however, of default in the payment of the brand assessment in 1937 (§17, c. 160, '35 C.S.A.), such brand was dropped from the records but never was recorded as belonging to any other person. The K Bar backward C brand was recorded as that of Fannie Osborne, the mother of Sumner Osborne.

After placing the cattle in the pasture last mentioned, the two Cahills, accompanied by one Betts who testified for the people, drove to Denver in defendant's truck where in a brand book there procured, defendant checked up on the P inverted U brand. As would be accounted for by the assessment default we have mentioned, defendant was unable to find this brand recorded to Earl Osborne or anyone else. The three immediately returned to the place where the cattle had been left, drove them to defendant's ranch, loaded them in his truck and proceeded to the Denver Stock Yards where they arrived about 1 o'clock a.m. on the 24th. On the way, at defendant's direction, Betts fabricated a bill of sale for a portion of the cattle from Fannie Osborne to Earl Osborne, to which he forged Fannie Osborne's name. Upon reaching the stock yards they consigned the cattle to Drinkard & Emmert, commission merchants, in the name of Earl Osborne. Defendant and his associates then retired to a hotel where they registered under assumed names. The next day they went to the office of Drinkard & Emmert and secured the proceeds from the sale of the cattle in the form of a check for $545.35 payable to Earl Osborne. By forging the endorsement of Earl Osborne thereon the Cahills procured cash in the amount stated, which was divided between them. The two Cahills were arrested on October 30, 1941, in Colorado Springs, and at the request of the sheriff of Teller county were incarcerated in the El Paso county jail until November 19, 1941, when they were removed to Cripple Creek. It further appeared from the evidence that Sumner Osborne, the alleged owner of the cattle involved, disappeared from his usual place of abode about October 17, 1941, and still was missing at the time of the trial. It may be inferred from the record that at one time defendant was suspected of being implicated in Osborne's unexplained disappearance.

As one ground for reversal defendant contends that the evidence was insufficient to prove the owner-

ship and possession by Sumner Osborne of the cattle on October 23 as alleged in the information. In this connection it is argued that the circumstance that the brands borne by these cattle were recorded to Earl and Fannie Osborne is prima facie proof under our statute (section 10, chapter 160, '35 C.S.A.), that they, and not Sumner, were the owners of the cattle. While, as contended, a recorded brand is prima facie evidence of the ownership of the animals so branded, it is well established that it is not conclusive of such fact. *Howry v. Sigel-Campion Co.*, 80 Colo. 143, 249 Pac. 658. Herein it was shown that for many years Earl and Sumner had been partners in the livestock business using the backward P inverted U brand; that the partnership was terminated in 1938 and thereafter Earl had given Sumner a bill of sale for all cattle bearing such brand. It also was testified that several years prior to the trial Fannie Osborne likewise had given Sumner a bill of sale for all cattle bearing her brand. At least two witnesses testified unequivocally that the cattle sold by defendant were owned by Sumner and were in his possession in September and October, 1941. A number of other witnesses for the people testified on direct examination that the cattle involved belonged to Sumner and in the summer and fall of 1941 were in his possession at the ranch from which they were driven by defendant and his brother. On cross-examination some of the latter group of witnesses admitted some uncertainty as to whether the cattle were owned by Sumner individually or jointly with his mother or brother. Obviously, such indecision on the subject of the legal ownership of the cattle as was exhibited by these witnesses went to the weight to be given their testimony by the jury and could have no greater legal consequence. In these circumstances we have no doubt the evidence was sufficient to sustain a jury finding that the presumption of ownership arising from the recorded brands had been overcome, and to conclude that Sumner was the owner of the cattle in

question. There is no merit in the contention that the proof was insufficient to convict, upon the theory that because Sumner had disappeared prior to October 23, the alleged date of the larceny, he thus could not have been deprived of the immediate possession of the cattle on the day alleged. It is elementary that notwithstanding an actual want of custody of a chattel allegedly stolen, the possession thereof, in contemplation of law, remains in the person last in actual possession until he has abandoned it or parted with it to someone else. 36 C.J., pp. 757, 758, §§79, 80. There is no suggestion in the evidence that in any legal sense Sumner abandoned these cattle or gave their possession to any other person.

■ The court refused to give an instruction tendered by defendant reading: "That it is necessary for the prosecution to prove by the evidence beyond a reasonable doubt, as in these instructions defined, the ownership of the cattle as charged in the information, and that if the prosecution fails to so convince you, you shall find the defendant not guilty." Error is assigned to this ruling. Given Instruction No. 5 specifically detailed all of the elements of the crime charged including the essentialities of ownership and possession, and as a condition to conviction required proof thereof beyond a reasonable doubt. Having so generally instructed the jury concerning all the requisite components of the offense, it was not incumbent on the court to instruct specifically as to one of them alone. *Grandbouche v. People*, 104 Colo. 175, 89 P. (2d) 577; *Henwood v. People*, 57 Colo. 544, 143 Pac. 373, Ann. Cas. 1916 A, 1111.

■ In informing the jury of the definition of the criminal act charged, the court used the precise language of section 93, chapter 48, supra. This, defendant asserts, was erroneous in that the language of the statute contains the words "embezzle" * * *, "sell," * * * "or in any manner unlawfully deprive the owner of the immediate possession" of any cattle, which terms

were not included in the information. It is argued that from the use of the language of the statute itself the jury may have found defendant guilty under circumstances not charged in the information. This point is not well taken. By Instruction No. 1 the jury was given verbatim the charge as contained in the information, and Instruction No. 5 again reiterated the precise elements of the offense as alleged. "As a general proposition the objection that instructions were given in the language of the statute is not tenable." *Kent v. People,* 8 Colo. 563, 9 Pac. 852. "When the offense is statutory it is generally proper and sufficient to give the definition in the language of the statute." 23 C.J.S., p. 742, §1194. See, also, *Militello v. People,* 95 Colo. 519, 37 P. (2d) 527, and *Medberry v. People,* 107 Colo. 15, 108 P. (2d) 243. In the circumstances here we perceive nothing which takes the case from the purview of the general rule. While the inclusion verbatim of inapplicable subdivisions of statutes in instructions to a jury was said to be improper, in the opinions in *State v. Siddoway,* 61 Utah 189, 211 Pac. 968; *Lee v. State,* 16 Ariz. 291, 145 Pac. 244, and *People v. Moshiek,* 323 Ill. 11, 153 N.E. 720, cited by counsel for defendant, in all these cases it was expressly held that the *giving of such an instruction did not constitute reversible error.*

For the purpose of showing good character, in the sense of general reputation, defendant called two witnesses. The testimony of one, simply to the effect that defendant had always been "respected by almost everyone that has known him" clearly was inadequate to prove the general good reputation of defendant as a peaceable and law-abiding citizen. The other witness in a somewhat hypothetical manner did testify, however, that defendant's reputation in such respects was good. Defendant tendered, and the court refused to give, an instruction to the effect that since defendant had introduced evidence of his good character, the jury should consider that evidence "together with all other evidence

in the case, because the law presumes that a person of such reputation is less likely to commit a crime than a person of a different reputation." The record does not disclose whether the refusal was grounded upon the theory that the proof was insufficient to justify an instruction on the subject, or upon the premise that the instruction legally was in improper form. Whatever was the view of the trial court its action was justifiable because of ambiguous and erroneous language in the tendered instruction which, instead of merely leaving it to the jury to attach such importance to the evidence of good character as they thought proper, should have informed them expressly of the scope of their power in the exercise of a sound discretion with respect thereto. See, *People v. Elliott,* 163 N.Y. 11, 57 N.E. 103; *People v. Childs,* 85 N.Y.S. 627, 90 App. Div. 58, 18 N.Y. Cr. 114, and *Commonwealth v. Chester,* 77 Pa. Sup. 388. Secondly, notwithstanding that instructions containing the words "the law presumes," etc., have been approved by some appellate courts (See, *Prater v. State,* 107 Ala. 26, 18 So. 238), we are satisfied that it may not properly be held that there is a *presumption of law* that a person of good character is less likely to commit a crime than a person of bad reputation. *Knight v. State,* 22 Ala. App. 557, 117 So. 804; *Crews v. State,* 22 Ala. App. 564, 117 So. 801, and *State v. Ferrell,* 202 N. C. 475, 163 S.E. 563. When defendant so asks an improper instruction on the subject of character, he has no ground for complaint if none at all is given. *State v. McNamara,* 100 Mo. 100, 13 S.W. 938.

The sheriff and undersheriff of El Paso county were permitted to relate to the jury a confession of defendant amounting to a full acknowledgment of his part in the commission of the criminal acts herein charged, allegedly made orally in the El Paso county jail in the presence of the district attorney, John Cahill, defendant's brother, and themselves on November 14. Counsel for defendant objected to the admission of the

confession on the ground that it was involuntary, and requested a preliminary inquiry out of the presence of the jury with respect thereto. It is strenuously contended that the failure of the court to grant this request and the reception of the testimony detailing the confession without such a preliminary hearing, constituted reversible error. Generally, there should be an adherence to the procedure requested by defendant and, if proper objection is made when evidence of the confession is about to be submitted, it is error to allow such evidence to go to the jury until the court, after a hearing out of the presence of the jury, has determined preliminarily that the confession was voluntary. Corollarially, it also is certain that a failure to observe the procedural requirements of the general rule is not fatal when the defendant is not prejudiced thereby. See, *Buschy v. People,* 73 Colo. 472, 216 Pac. 519. We are satisfied the latter situation affirmatively appears from the record herein. The examination of the officers to whom the confession was made contains no trace of any effort on their part to influence the defendant's conduct in this regard by inducements or threats. In fact, they testified that defendant specially requested that he be permitted to make the statement to them. They also stated that pursuant to defendant's express desire, his brother John was brought to the conference to hear, as admittedly he did, what defendant said. John was called as a witness for defendant and contradicted the officers as to one statement they had attributed to defendant, but gave no testimony from which it might be concluded, directly or inferentially, that the confession was other than voluntary. From the tenor of defendant's objections and from the statements in his affidavit concerning the circumstances made when the point was urged as a ground for new trial, it appears to have been his contention that the confession was rendered involuntary by the alleged occurrences: (1) That before making the statement he was not warned that it might be used against him; (2)

that following his arrest he was placed and kept in a cell separate and apart from the one occupied by his brother; (3) that he was interrogated daily and was accused "of divers and sundry crimes, including the murder of Sumner Osborne"; (4) that although within a day of two after his arrest he had requested permission to consult an attorney, he was not granted this privilege until "at least ten days subsequent to his arrest"; (5) that for about two weeks after his arrest none of his friends or relatives were permitted to see him; (6) that on "divers and sundry occasions * * * he was advised by different officers that portions of his property on his ranch in Teller County were being removed by one person or another, but was allowed to make no effort to prevent such removal until practically the time of his being taken to Teller County." The affidavit terminated with the statement, by way of conclusion, that because of the incidents above mentioned, defendant "was in no state of mind to make a voluntary statement."

■■ Considering these contentions categorically, it is well established that a confession voluntarily made is not invalidated or made inadmissible in evidence by reason of the failure of the officers to inform the defendant that his confession might be used against him. *Reagan v. People,* 49 Colo. 316, 112 Pac. 785; *Rogers v. People,* 76 Colo. 181, 230 Pac. 391. It is further to be observed in this connection that here it was testified for the people, that in advance of his confessing, the defendant so had been informed by the district attorney. The fact that defendant was in custody at the time he made the statement, in itself, does not render the evidence incompetent (*Reagan v. People, supra*), nor is evidence of a confession "rendered inadmissible merely by the fact that it was obtained during an undue delay between arrest and the time when accused was brought before the court; by the fact that when it was made persons in authority were present * * * , or that he was

not represented by counsel * * * or because of other similar factors." 22 C.J.S., p. 1431, §817. Bearing in mind that defendant was arrested on October 30, and the confession was made November 14, it is to be noticed that on the basis of defendant's own statement he was permitted to see counsel several days before the confession was made to the officers. "Also, the fact that the friends and family of accused were denied admission to the jail until after the confession was made does not render the confession inadmissible. 22 C.J.S., p. 1433, §817.

The affidavit of defendant does not so much as suggest that upon any occasion he was questioned continually to the point of physical or mental exhaustion or that "third degree" methods in any form were attempted by the officers having him in charge. The fact that he was accused of the crime charged or of other offenses by the officers would not render evidence of the confession inadmissible. *Osborn v. People,* 83 Colo. 4, 262 Pac. 892. The assertion, if true, that defendant was told of the disappearance of his property, in the absence of some promise by the officers tending to alleviate his anxiety if he should confess, which is not even hinted, obviously would not render his confession involuntary.

Defendant finally assigns error upon the basis that his counsel was unduly restricted in cross-examination of witnesses for the people with reference to defendant's state of mind at the time he confessed. A careful examination of the record convinces us that this contention is without merit.

The judgment is affirmed.

Mr. Justice Hilliard dissents.

On Petition for Rehearing.

Mr. Justice Hilliard dissenting.

I regard the reception of "defendant's confession" in evidence under the circumstances presented, as gravely

erroneous. The court opinion recites: "Counsel for defendant objected to the admission of the confession on the ground that it was involuntary, and requested a preliminary inquiry out of the presence of the jury with respect thereto." The objection was overruled and the request denied. Thwarted below, defendant emphasizes the point on error.

In *Osborn v. People*, 83 Colo. 4, 29, 262 Pac. 892, 901, Mr. Justice Butler said: "This court, on repeated occasions, has said that, to be admissible, a confession must be voluntary, and that the question of admissibility is for the court." In support of the doctrine thus stated, the distinguished jurist cited an array of Colorado cases, among them the early case of *Fincher v. People*, 26 Colo. 169, 56 Pac. 902, where, speaking through Mr. Justice Gabbert, we said: "It was the province of the court alone to determine whether the confession was made with that degree of freedom which would render it admissible as evidence * * * , the usual practice being to determine its admissibility as a preliminary question, by hearing all the evidence touching the subject of its being voluntary. This rule rests upon the proposition that the competency of evidence is a legal question, which must be determined by the court, and its credibility by the jury." Addressing himself further to the point, Mr. Justice Gabbert quoted from Greenleaf as follows: "* * * The material inquiry, therefore, is, whether the confession has been obtained by the influence of hope or fear applied by a third person to the prisoner's mind. The evidence to this point, being in its nature preliminary, is addressed to the judge, who admits the proof of the confession to the jury, or rejects it, as he may or may not find it to have been drawn from the prisoner, by the application of these motives. This matter resting wholly in the discretion of the judge, upon all the circumstances of the case, it is difficult to lay down particular rules *a priori*, for the government of that discretion. The rule of law, applicable to all cases, only demands that the

confession shall have been made voluntarily, without the appliance of hope or fear by any other person, and whether it was so made, or not, is for him to determine, upon consideration of the age, situation, and character of the prisoner, and the circumstances under which it was made." *Fincher v. People, supra,* has been cited with approval to the point in question, as have other Colorado cases announcing the same rule, in the late cases of *Moss v. People,* 92 Colo. 88, 97, 18 P. (2d) 316, 319, and *Saiz v. People,* 93 Colo. 291, 295, 25 P. (2d) 1114, 1116.

"The admissibility of a confession, where it is challenged, is a question solely for the court after hearing, in the absence of the jury, all the evidence on each side respecting the manner in which the confession was obtained; and the court is necessarily vested with a large discretion in determining the matter, a discretion, however, which should be exercised with great care to the end that the due and proper enforcement of the law on the one hand be not impeded, and that no injustice be done the defendant on the other." *Berry v. State,* 4 Okl. Cr. 202, 111 Pac. 676, 31 L.R.A. (N.S.), 849. See, 22 C.J.S., pp. 1458, 1468, §§834, 838. "The admissibility of a confession being dependent upon its voluntary character, the question of whether or not it is voluntary must be decided in the first instance, when the offer to introduce the testimony is made, provided and assuming that an objection to the effect that the confession is inadmissible because involuntary is properly interposed. The practice in most jurisdictions, upon such offer of introduction and objection timely and properly made, is to conduct a preliminary examination of the evidence of the prosecution and defense, in the absence of the jury, to determine the admissibility of the confession. This determination is made by the trial court, upon the recognized and accepted principle that the voluntary or involuntary character of the confession is a question of law, to be determined by the trial judge, from the facts

as adduced. This is the prevailing and well-recognized rule in the United States, and in accordance with the elementary principles defining the functions of judge and jury. The sole question to be determined by the trial judge is whether the confession is admissible because voluntary, or inadmissible because involuntary. All other questions, including whether the confession was actually made, or the weight and credence to which it is entitled, are for the jury if the confession is found to be admissible." Wharton's Criminal Evidence (11th ed.), p. 981, §594. In support of the text, cases are cited from United States, Alabama, Arizona, Arkansas, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Illinois, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming.

In Underhill's Criminal Evidence, 3rd edition, page 309, section 217, the author states: "The preliminary question, was the confession voluntary? bearing directly upon its competency as evidence, must be, according to the majority of the cases, decided by the court, as a mixed question of law and fact. And the court may hear evidence from both sides to show the circumstances under which the confession was made." See, also, page 313, section 219, where Underhill further says: "In any case it is his [defendant's] right to show by preliminary evidence that the confession was not voluntary, and it is the duty of the court, in determining the competency of the confession, not only to consider the evidence for the state, showing the confession was voluntary, but the evidence elicited by the accused to prove the contrary in his favor as well. A refusal, before the confession is admitted, to allow counsel for the prisoner to cross-examine the witness as to the voluntary character of the

confession; or to allow the accused to testify, and to explain his mental condition when it was made; or to show by the evidence of others that it was improperly obtained, is reversible error." See, III Wigmore on Evidence (3rd ed.), page 345, section 861, where that great author, proceeding inimitably, and with compelling analysis, arrives at the same conclusion. I have been at pains to state and fortify the rule, not because the opinion of the court, in terms, declares against it, but, rather, that the ruling below, contrary to the rule, and tolerated here, may stand in relief. The weakness of the opinion is the conclusion indulged that the evidence as taken in the presence of the jury indicates that the alleged confession was voluntary, hence, as further speculated, the trial judge, had he observed the rule, would have admitted it, and, therefore the error is without prejudice. That, manifestly beyond our ken, is wholly unsound. Had the trial judge followed the rule, requested and moved in ample form, and heard the whole story in his chambers or other place of calm atmosphere, the revelations might well have caused him to give pause, and within reasonable possibilities convinced him that voluntariness did not obtain. The rule is invocable as of right. Speculation as to how the trial judge, proceeding in consonance therewith, would have decided the requisite preliminary question, is not permissible.

The quotation in the court opinion from section 817, 22 C.J.S., p. 1433, consists of discussions relative to the admissibility of confessions obtained or given under varying circumstances, and not as to the manner of the ascertainment thereof. So far as the cases cited in support of the quoted text make disclosure, there were preliminary inquiries by the trial judge, and the questions for decision on review did not have to do with the procedural rule involved here, but rather as to whether the judges, having proceeded to make preliminary inquiry in accordance with the rule for which defendant contends on this review, had rightly resolved in favor of the

admission of the confessions. That it is the office of the trial judge, acting in the absence of the jury, to inquire preliminarily as to the voluntary qualities of any claimed confession, is discussed in sections 834 and 838, same volume and title. Colorado reports are replete with instances indicating that when the people have offered an alleged confession of a defendant on trial, and to which there was objection on the ground that it was involuntary, as here, preliminary inquiry by the judge, out of the presence of the jury, has been the procedure employed. In *Mitchell v. People,* 76 Colo. 346, 232 Pac. 685, Mr. Justice Burke, discussing in the opinion the question of whether a confession was voluntary, said: "The court heard conflicting evidence on this subject, in the absence of the jury, and held the confession voluntary. * * * . The question was primarily one for the court." The case of *Fincher v. People, supra,* was cited there.

The case of *Buschy v. People,* 73 Colo. 472, 216 Pac. 519, examined in the light of its record, is only understandable on the theory then widely entertained that a "miserable bootlegger" is beyond the pale. It cites section 822, 1 Wigmore on Evidence (1st ed.), which, like section 817, 22 C.J.S., pp. 1424, et seq., referred to in the court opinion here, discusses the admissibility of confession in cases where the trial court, first proceeding preliminarily according to the rule, had found them to be voluntary. If the learned author of the opinion in the Buschy case had had his attention called to section 861, same volume of Wigmore, he would have found the rule that controls trial judges as they go about ascertaining the facts relative to confessions, offered and challenged, clearly, as here, and there, too, as I respectfully suggest. In the Buschy opinion the court cited *O'Donnell v. People,* 71 Colo. 113, 204 Pac. 330. But there, unlike the Buschy case and the one here, the opinion recites that, "When offered [the confession] in evidence the jury was excused and witnesses examined by the court as to the

character of the confession." The record proper in the O'Donnell case reveals with what care the trial judge there observed the rule that was scouted by the trial judge here.

Although I shall not pause to state the situation in detail, I call attention to the fact that in addition to refusing to determine in the absence of the jury the question of whether the alleged confession was voluntary, the restricted cross-examination imposed by the court on counsel as he sought to elicit full revelation from the officers who testified in chief with relation thereto, operated to prejudice defendant's case before the jury. In short, the court would neither make investigation on its own account, nor permit reasonably full presentation to the jury. The first error, major in every particular, and not forgivable on review, should constitute unquestioned reason for reversal; and to correct the second error, born of the first, should add to the enthusiasm of reviewing well-doers. "The history of liberty has largely been the history of observance of procedural safeguards." *McNabb v. United States*, 318 U.S. 332, 63 Sup. Ct. 608, 87 L. Ed. 579.