## AMERICAN SUMATRA TOBACCO CORPORATION v. WILLIS.

### No. 12265.

United States Court of Appeals
Fifth Circuit.

Oct. 21, 1948.

John R. Wilson, of Bainbridge, Ga., and W. W. Alexander and T. H. Vann, both of Thomasville, Ga., for appellant.

A. B. Conger and Vance Custer, both of Bainbridge, Ga., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and WALLER, Circuit Judges.

McCORD, Circuit Judge.

This suit was brought by American Sumatra Tobacco Corporation against T. F. Willis to recover damages for breach of a written contract for the sale of tobacco,

executed December 26, 1945. Pertinent portions of the contract under consideration, upon which decision here must turn, contain the following language:

"I agree to sell to, and American Sumatra Tobacco Corporation agrees to buy, my entire crop of 1946 Shade Grown Tobacco, to be grown by me on about 30 acres, at $1.90 per pound, upon the terms and conditions specified herein. * * * The purchaser agrees to pay cash for the shade tobacco so delivered after delivery of all of my entire crop. * * *".

The contract further specifies the conditions under which the tobacco was to be grown, cured and packed, contains certain requirements as to quality, and designates optional points for delivery. When the contract was signed and delivered the Tobacco Corporation advanced $300.00 to Willis on account.

It is without dispute that during the year 1946 Willis grew about 28 acres of shade tobacco, and that the yield of such acreage was 34,805 pounds; that he failed and refused to deliver this amount to appellant Tobacco Corporation under the contract, but sold and delivered same to the Max Wedeles Tobacco Company, for which he received a price of $2.25 per pound.

Appellee Willis plants his defense on the ground that he owned two farms near Fowlstown, Decatur County, Georgia; that one of the farms was known as the "Speight Place" and the other was known as the "Bower Place"; that Max Wedeles Tobacco Company held the legal title to the "Speight Place" as security for a debt, and that appellant knew that he was obligated to sell all shade grown tobacco on that place to that company; that he agreed to sell to appellant Tobacco Corporation approximately thirty acres of shade grown tobacco to be grown on the "Bower Place"; that he made an effort to grow such tobacco on the "Bower Place" but, through no fault of his own, his crop was a total failure, so that he produced only two and one-half acres of sun tobacco which was sold at 70 cents per pound; that on March 29, 1946, he tendered to appellant the $300.00, which was advanced to him at the time the contract was executed, and the tender was refused.

Appellant Tobacco Corporation objected to the above answer, and also to the admission in evidence of any extraneous parol agreements and circumstances which tended to exclude the delivery of tobacco grown on the "Speight Place" from the terms of the contract, on the ground that such evidence would vary, alter, and contradict the plain terms of a complete and unambiguous written contract; that the contract should be construed as an executory agreement to sell Willis' entire crop of shade grown tobacco for the year 1946, estimated at about 30 acres.

The trial court nevertheless construed the contract in question to be ambiguous because it failed to identify a particular 30 acres on which the tobacco was to be grown, and thereupon admitted voluminous testimony for appellee tending to show the intention of the parties to limit the contract to only that crop of shade grown tobacco from the "Bower Place".

In his oral charge, the court submitted to the jury the question of whether the parties intended to contract with reference to appellee's entire crop of shade grown tobacco for the year 1946, or just the crop to be grown on the "Bower Place". The jury found in favor of appellee on this issue, and the trial court thereafter entered an agreed judgment in favor of appellant Tobacco Corporation for $304.50, the amount of its advance to appellee under the contract, plus interest.

It is without dispute that the two tobacco farms adverted to in the evidence, the "Bower Place" and the "Speight Place", were situate on contiguous tracts of land in Georgia. The contract in question must therefore be construed in the light of applicable Georgia law.

A careful consideration of all the record evidence impels the conclusion that the contract here means exactly what its wording plainly implies. In clear and unmistakable terms it calls for Willis' "* * * *entire crop of 1946 Shade Grown Tobacco,* to be grown by me (Willis) *on about 30 acres* at $1.90 per pound, * * *". Moreover, it further states "* * * purchaser (appellant) agrees to pay cash for the shade tobacco so delivered after de-

livery of *all of my entire crop.* * * *."
(Italics ours.) It becomes manifest that the phrase " * * * on about 30 acres * * *" in nowise makes the contract ambiguous simply because it fails to identify a particular tract of land on which the tobacco was to be grown. This wording was merely informative to the end that as appellant entered into contracts for the purchase of shade grown tobacco, it might estimate with some degree of accuracy the amount of such tobacco it could expect to receive at harvest time. In contracts intended to effect the sale of an entire output, a mere estimate on the quantity expected to be delivered is not binding. 46 Amer.Juris. 337, Sales, Sec. 160, citing Bautovich v. Great Southern Lumber Co., 129 La. 857, 56 So. 1026, Ann.Cas.1913B, 848, and Kenan, McKay & Spier v. Yorkville Cotton Oil Co., 109 S.C. 462, 96 S.E. 524, 1 A.L.R. 1387; also, see Forsyth Mfg. Co. v. Castlen, 112 Ga. 199, 37 S.E. 485, 81 Am.St.Rep. 28.

 We are not permitted to make contracts for litigants, but only empowered to construe the language and meaning of contracts made and entered into, as they are intended and understood by the parties. In the absence of fraud, accident or mistake, none of which elements are found to exist here, parol evidence is not admissible to vary, alter, or contradict the terms of a complete and unambiguous written contract. Ga.Code Ann. § 20-704, subd. 1; Gilleland v. Welch, 199 Ga. 341, 34 S.E.2d 517; McCann v. Glynn Lumber, 199 Ga. 685, 34 S.E.2d 839, 845; Bullard v. Brewer, 118 Ga. 918, 45 S.E. 711.

Much of the testimony here varied the terms of the written contract, and in many respects tended to create an entirely new agreement. Even in cases where parol evidence is admissible to alter the terms of a written contract, it must first appear that the contract is incomplete, and that the evidence sought to be introduced in nowise conflicts with what is written. Pryor v. Ludden & Bates Southern Music House, 134 Ga. 288, 67 S.E. 654, 655, 28 L.R.A., N.S., 267; Brosseau v. Jacobs Pharmacy Co., 147 Ga. 185, 93 S.E. 293, 295; Roberts v. Investors' Savings Co., 154 Ga. 45, 113 S.E. 398.

The contract in question is neither incomplete nor ambiguous, but is plain to the end that appellant was entitled to receive all of the shade tobacco grown by appellee Willis in the year 1946. The admission by the trial court of the testimony objected to by appellant is clearly reversible error. Ga.Code Ann. §§ 20-704, subd. 1, 38-501; Logan v. Big Sandy Lumber Co., 5 Cir., 296 F. 658; Howry v. Sigel-Campion Live Stock Commission Co., 80 Colo. 143, 249 P. 658; J. N. Pharr & Sons v. C. D. Kenny Co., 5 Cir., 272 F. 37; Dorsey v. Clements, 202 Ga. 820, 44 S.E.2d 783, 173 A.L.R. 509.

The cause is reversed with directions to ascertain from evidence the amount of damages to which appellant is entitled by virtue of appellee's failure and refusal to deliver to it his entire crop of shade tobacco grown in the year 1946, which the record reveals was twenty eight acres, or 34,805 pounds. Appellant is further entitled to have added to its damages the amount of its advance to Willis under the contract, plus interest from the date of breach.

Reversed and remanded with directions.