**BLAUGRUND et al. v. UNITED STATES.**

No. 12340.

United States Court of Appeals
Fifth Circuit.

Jan. 11, 1949.

Rehearing Denied Feb. 7, 1949.

E. F. Cameron, of El Paso, Tex., for appellants.

George S. Swarth, Atty. Dept. of Justice, of Washington, D. C., Henry W. Moursund, U. S. Atty., of San Antonio, Tex., Frank H. Hunter, Asst. U.S. Atty., of El Paso, Tex., A. Devitt Vanech, Asst. Atty. Gen., and John F. Cotter, Atty. Dept. of Justice, of Washington, D. C., for appellee.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

This appeal is from the denial of a claim against the United States for expenses alleged to have been incurred in restoring certain premises leased to the Government under a standard Government lease contract.

The important question presented is whether a clause in the lease requiring the United States to "restore the premises to the same condition as that existing at the time of entering upon the same under this lease", obligated the Government to pay the expense of restoring the premises to the condition that existed before alterations were made for Government occupancy. The answer necessarily involves a construction and interpretation of the lease contract, as intended and understood by the parties.

In March, 1942, the Censorship Bureau of the United States desired to lease 10,000 square feet of floor space in the First National Bank Building and the First Mortgage Company Building, which were adjoining office buildings located in El Paso, Texas. The space desired was not then available, but the owners soon began to make arrangements to vacate the third floor of both buildings. At this time, the third floors were suitable as ordinary office rooms, but were not adequate or adaptable to the needs of the Censorship Bureau.

On April 13, 1942, a lease was executed for 2,450 square feet of floor space on the third floors of these adjoining buildings. This lease, which was on a standard Government form, was for a term beginning April 16, 1942, and ending June 30, 1942, renewable for five years from year to year, and subject to cancellation by the Government upon sixty days' notice. Paragraph 8 of the lease contract further provided that:

"The Government shall have the right, during the existence of this lease, to make alterations, attach fixtures, and erect additions, structures, or signs, in or upon the premises hereby leased * * * which fixtures, additions, or structures so placed in or upon or attached to the said premises shall be and remain the property of the Government and may be removed therefrom by the Government prior to the termi-

nation of this lease, *and the Government, if required by the Lessor, shall, before the expiration of this lease or renewal thereof, restore the premises to the same condition as that existing at the time of entering upon the same under this lease,* reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted; * * *". (Italics supplied.)

The instructions attached to the lease provided that there should be no deviation from the lease form without prior authorization by the Director of Procurement of the Treasury Department, except that if the premises were suitable for Government occupancy without alteration, the above paragraph 8 might be deleted.

On April 25, 1942, a second lease was executed, containing substantially the same provisions as the first. The term of this second lease commenced on the date of its execution, and it was for an additional 2,909 square feet of space on the third floor of the two buildings. The Government took immediate possession of this additional space, as was done under the first lease, and became liable for the agreed rent of $1.15 per square foot a year from the date of the lease.

On May 25, 1942, a third similar lease for an additional 7,759 square feet of space, representing the entire remaining space of the third floors of both buildings, was executed. As provided under the former leases, the term of the third lease commenced on that day, and the Government entered into possession of the additional space and became liable for the agreed rent from that time.

On June 26, 1942, a fourth and final lease was executed at the Government's request, which lease covered the entire third floors of both buildings for a term beginning July 1, 1942, and ending June 30, 1943, with option of renewal. This final lease was on the same form as the earlier leases, but incorporated bid conditions for altering the premises, and provided a lump sum allowance of $1,500, which was paid by the Government for alterations on the first 11,000 square feet of space, and a further allowance of 10 cents per square foot on space over that amount. The bid conditions further provided:

"The space shall be divided as required by the Government into three to six large rooms approximately 2000 to 6000 square feet, and into six to ten smaller rooms of approximately 200 to 500 square feet."

It was shown that at the time the above leases were executed, the First National Bank Building was owned by the Chemical Bank and Trust Company, and the adjoining First Mortgage Company Building was owned by the Bucher Corporation. Although the Bucher Corporation was a party plaintiff to the original proceeding, it has not appealed from the judgment, and this case involves only the space acquired from the First National Bank Building. The plaintiffs, as assignees, acquired and succeeded to all the rights of the Chemical Bank and Trust Company in the First National Bank Building after the execution of the leases under consideration.

On August 20, 1945, the Government gave notice that its lease was terminated, as to the 8,825 square feet of space owned by plaintiffs. As the premises had then been altered for occupancy by the Censorship Bureau, they were no longer suitable as ordinary commercial offices for which use they were intended, and it therefore became necessary to spend the sum of $9,540.46 to restore the premises to the same condition they were in prior to the execution of the lease contracts. Plaintiffs made demand on the Government for the above amount, as the reasonable and necessary cost of restoring the premises, under paragraph 8 of the lease agreement. Their claim was denied by the Comptroller General.

The case was tried by the court without a jury. After hearing all the evidence, the trial court found that the lease contract of June 26, 1942, had merged all prior lease agreements; that paragraph 8 of all leases introduced in evidence was clear and unambiguous; and "That neither Paragraph 8 nor any other provisions of said lease require the Government to restore said premises, except such alterations as were made by the Government after occupancy". The court further found that there was no showing with sufficient certainty that any

alterations chargeable to the Government were made, after the Government occupied the premises, or of the reasonable cost to restore any such portions of the premises. Judgment was accordingly entered in favor of the United States.

We are of opinion the trial court properly held that paragraph 8 of the lease contract was clear and unambiguous, and manifestly related only to alterations made during Government occupancy of the premises. Navajo Production Co. v. Panhandle Eastern Pipe Line Co., 5 Cir., 132 F.2d 1, 3; Hoffer Oil Corporation v. Hughes, Tex. Civ.App., 16 S.W.2d 901; American Sumatra Tobacco Corporation v. Willis, 5 Cir., 170 F.2d 215.

 It measures to a certainty that the parties to this lease contract never contemplated that the Government should be liable for restoring the premises to their condition before occupancy, where the alterations were made by the lessor to furnish space in compliance with Government requirements and specifications. To the contrary, as the lease contract, the instructions attached thereto, and the bid conditions patently reveal, it was clearly contemplated and understood by all parties that the Government's allowance to the lessors of over $1,500 to effect the necessary alterations, plus its payment of some $15,000 yearly rental for the premises, was to fully compensate them for the use of their property, as well as for the cost of any necessary alterations when Government occupancy ended. Plaintiffs were not the original parties to the lease agreement and did not sign such contract, but are assignees of the original owners of the building in question. There is nothing in the lease contract indicating that their assignor, the Chemical Bank and Trust Company, ever contemplated that the Government should bear the expense of alterations for which this suit was brought.[1] Moreover, appellants' contention that "it was the intention of all parties" that the premises would be restored at the expense of the Government, to the condition exist-

ing prior to the alterations required by Government specifications, is not borne out by the evidence.

 We find no error in the court's refusal to grant a new trial, or in denying the motion to re-open the case for presentation of additional evidence. Such evidence, in the light of this opinion, would have been wholly irrelevant and immaterial to the issues involved. The decision here turns upon the language of the contract, and evidence was not admissible to vary or alter its terms. American Sumatra Tobacco Corporation v. Willis, 5 Cir., 170 F.2d 215.

The judgment is

Affirmed.

---

[1] The Assistant Manager of the First National Bank Building, wrote a letter to the Government in March, 1942, offering space in the building at a rental of $1.15 per annum, the rental including "reasonable alterations and the necessary cost in order that this space may be produced to satisfy your needs".