No. 15,794.

ROPER *v.* THE PEOPLE.
(179 P. [2d] 232)

Decided June 2, 1947.   Rehearing denied June 23, 1947.

494

Mr. Anthony F. Zarlengo, Mr. A. J. Laing, for plaintiff in error.

Mr. H. Lawrence Hinkley, Attorney General, Mr. Duke W. Dunbar, Deputy, Mr. James S. Henderson, Assistant for the people.

*In Department.*

Mr. Justice Hays delivered the opinion of the court.

Clarence Alonzo Roper was charged by information in the district court of Lake county with the murder of Felix Gallegos, and convicted of voluntary manslaughter. He seeks reversal of the judgment by reason of the refusal of the trial court to give the tendered instruction hereinafter set forth.

The deceased was shot and killed by a bullet discharged from a gun held by the defendant in the latter's tavern in Leadville on March 7, 1946. Defendant freely admitted to the police officers at the time of his arrest that he shot deceased, and on the witness stand related all of the circumstances leading up to the shooting. He testified that shortly before his arrest he had put his gun in the safe and had "poured a big beer glass half full of whiskey and drank it," and then went back to work; that a short time thereafter the officers came and as to what then occurred, he testified as follows: "Q. Do you remember O'Malia [police officer] coming in? A. Yes, sir. Q. What did he say? A. He spoke up and said who fired the shot? Q. What did you say? A. I said I did. Q. What

else was said? A. He said where is the gun and I said it is in the safe and he said will you give it to me and I said yes sir. Q. What happened then? A. I walked up to the safe and I walked up behind the bar to get the gun and all at once that whisky hit me like that and he said we will have to go. Q. Do you remember Sheriff McMurrough being in there? A. I don't know. Q. Do you remember coming up to jail that night? A. I have a slight recollection of coming up. Q. Do you remember any conversation you had with anyone coming up? A. No." The officers testified that when defendant arrived at the jail he addressed Buck Glenn, the undersheriff, and said in the presence of Tom Holden, the jailer, and Captain O'Malia, the arresting officer, "Well, Buck, I guess I got one."

Counsel for defendant contend that the statement last above mentioned was not voluntary; that it was made at a time when defendant was intoxicated, and did not know what he was saying; and that the question of voluntariness should have been determined by the jury under proper instructions. On the trial they tendered the following instruction, and assert that the refusal of the court to give said instruction is reversible error. This is the only question presented for review. The requested instruction is as follows: "You are instructed that in considering any statements alleged to have been made by the defendant you should consider the physical and mental condition of the defendant at the time the alleged statements were made as the said condition may be established by the evidence in the case."

The gist of this refused instruction is that, the jury should "consider the physical and mental condition of the defendant at the time the alleged statements were made." The court instructed the jury by its Instruction No. 18, that they were the sole judges of the credibility of the witnesses and of the weight to be given their testimony, and that they should consider "all other facts and circumstances shown by the evidence, which in your

judgment affect the credit due to them respectively." The giving of the tendered instruction would have added nothing to, and detracted nothing from, Instruction No. 18. While it does not appear in the record, we are warranted in assuming that defendant's able counsel explained to the jury that the statement of defendant should be given little, if any, weight, because of his physical and mental condition, at the time it was made, and that the question of the weight of the evidence was exclusively for its determination.

The statement, "Well, Buck, I guess I got one," is patently meaningless standing alone and could not be prejudicial to the defendant, or construed as a confession or admission. It only has meaning when considered in connection with his previous voluntary statement in his testimony, that the deceased said to him shortly before the shooting that the defendant thought "he was better than a Mexican." This must have been in the defendant's mind when he later said, "I got one." Defendant does not contend that he did not make the statement. He merely asserts that if he did make such statement, it was involuntary because of his inebriated condition. The jury no doubt was convinced that he knew what he was saying when the statement was made. He admitted he had "a slight recollection of coming up" to the jail. Also the jury must have been satisfied that he had more than "a slight recollection." Immediately upon his arrival at the jail and seeing the deputy sheriff sitting at the desk, he said, "Well, Buck, I guess I got one," which indicates that he was sufficiently sober to know *what* he was saying when he knew *to whom* he was speaking.

It is generally held that, "The fact that accused was more or less intoxicated when he confessed does not exclude the confession if he had sufficient mental capacity to know what he was saying." 22 C.J.S. 1452, §828.

As heretofore recited, defendant freely admitted the shooting and voluntarily took the witness stand and

revealed all of the minute circumstances leading up to the time when he claims the whisky "hit him." Prior to that time he concedes he was "cold sober." Having made a confession or admission voluntarily when he was in possession of his mental faculties, "A subsequent involuntary confession does not destroy or lessen the effect of a prior voluntary confession." 22 C.J.S. 1437, §817.

■ The tendered instruction, even if otherwise proper, is defective and incomplete in that it would not advise the jury what, if anything, they should do in the event they found the statement was involuntary by reason of defendant's alleged intoxication. An instruction upon the question of voluntariness was considered and approved by us in *Bruner v. People,* 113 Colo. 194, 156 P. (2d) 111. It is unnecessary here to quote that instruction verbatim as it is set forth in said opinion. A comparison will disclose that the tendered instruction in the instant case is fatally defective and does not conform to the requirements set forth in our opinion above referred to.

■ In the present case defendant made no objection whatsoever to the admission of the above statement in evidence, and consequently, the trial court had no opportunity to pass upon the question in the first instance as to whether or not it was voluntary, as our decisions require. It is conceivable that the trial court, if given an opportunity, and upon a proper showing, might have agreed with counsel and excluded the statement from the jury's consideration. Counsel have no right to assume that the trial court would have admitted it over their objection. On review we are entitled to have the benefit of the trial court's determination as to the voluntariness of admissions and confessions, as such conclusions have always been accorded great weight, and will not be set aside except upon clear showing that the court abused its discretion in making its ruling.

■ In the Bruner case we said at page 217:

"We recognize as a correct principle of law that the judge must preliminarily determine whether a confession is free and voluntary, and having determined that it is, the confession is then admissible in evidence; however, the determination of this question by the judge is, as we have said, preliminary, and there yet remains a function to be exercised by the jury concerning it. The jury is charged with the duty of determining in the last and final analysis whether the confession is freely and voluntarily made, and if the jury determines that it is not freely and voluntarily made, it is proper to disregard all testimony relative to the confession.

"The ruling of the judge on the voluntariness of the confession is not at all binding or conclusive on the jury and it may properly disregard the view taken by the judge, and, as the trier of all questions of fact, conclude that the confession was not free and voluntary, and having reached this conclusion from the evidence, it is the jury's duty to entirely disregard it.

"This is generally held to be the law. Where the evidence is conflicting as to the voluntariness of a confession it is almost universally held that it is necessary and proper that the court instruct the jury that if they do not believe that the confession was made freely and voluntarily they must wholly disregard it in arriving at their verdict. 23 C.J.S., p. 797, §1232, and cases therein cited."

In *Osborne v. People,* 83 Colo. 4, 262 Pac. 892, the whole subject of admissibility of confessions and admissions is exhaustively discussed and its complete history traced from the early English decisions down to the date of said decision. In that case, in discussing the function of the trial judge with respect to the admission of confessions, we said:

"The jury, of course, is not permitted to pass upon the question of admissibility. The court having admitted the confession in evidence, it is for the jury to determine the weight to which it is entitled. The jury may accord to

it great weight, little weight, or no weight at all, depending upon the circumstances surrounding the making of the confession. This ruling was made with reference to the character of a confession claimed to have been made during sleep. It would seem that the case in analogous to a confession claimed to have been involuntary because made as a result of improper threats or promises. If this is true, it follows that where the court is in doubt, whether the confession was voluntary or not, the evidence may be admitted, leaving it to the jury to determine the weight to which it is entitled under all the circumstances.

\* \* \*

"It was for the trial court, before passing upon the admissibility of the confession, to determine, not only from the conflicting evidence, but also by drawing inferences from such of the evidence as was not disputed, whether or not the confession was *in fact* 'obtained by the influence of hope or fear' applied to the prisoner's mind by the police officers; whether or not the confession was *in fact* 'drawn from the prisoner by the application of these motives.' Whether or not a confession was voluntary, is primarily a question for the trial court. *Its admissibility is largely within the discretion of that court; and on review, its ruling thereon will not be disturbed unless there has been a clear abuse of discretion. Mitchell v. People,* 76 Colo. 346, 232 Pac. 685, 40 A.L.R. 566." (Italics on last above sentence ours.)

The author of the article on "Confessions and Admissions," found in 23 C.J.S., at page 629, section 1135, speaking to the question of whether or not a confession is voluntary as relating to its admission in evidence, cites *Osborne v. People, supra,* as an authority on the subject.

The question as to the proper procedure in determining the admissibility in evidence of confessions or extrajudicial statements is fully covered in *Cahill v. People,* 111 Colo. 29, 137 P. (2d) 673 (148 A.L.R. 536), where we say: "Counsel for defendant objected to the admis-

sion of the confession on the ground that it was involuntary, and requested a preliminary inquiry out of the presence of the jury with respect thereto. It is strenuously contended that the failure of the court to grant this request and the reception of the testimony detailing the confession without such a preliminary hearing, constituted reversible error. Generally, there should be an adherence to the procedure requested by defendant and, if proper objection is made when evidence of the confession is about to be submitted, it is error to allow such evidence to go to the jury until the court, after a hearing out of the presence of the jury, has determined preliminarily that the confession was voluntary. Corollarially, it also is certain that a failure to observe the procedural requirements of the general rule is not fatal when the defendant is not prejudiced thereby. See, *Buschy v. People,* 73 Colo. 472, 216 Pac. 519."

The correct procedure is set forth more in detail in the dissenting opinion by Justice Hilliard in the Cahill case, where the leading authorities are collected.

Every argument advanced by counsel for defendant has been conclusively adjudged adversely to his contention in the following cases, none of which is cited in the briefs. *Osborne v. People, supra; Cahill v. People, supra; Honda v. People,* 111 Colo. 279, 141 P. (2d) 178; *Martz v. People,* 114 Colo. 278, 162 P. (2d) 408.

We find no error in the record; accordingly the judgment is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE STONE concur.