No 17,407.

ROY ROLL *v.* PEOPLE OF THE STATE OF COLORADO.

(284 P. [2d] 665)

Decided June 6, 1955. Rehearing denied June 27, 1955.

1

2

Mr. THOMAS K. HUDSON, Mr. CLARENCE W. BUTTON, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK A. WACHOB, Deputy Attorney General, Mr. NORMAN H. COMSTOCK, Assistant Attorney General, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

PLAINTIFF in error, herein referred to as defendant, was convicted of conspiracy to commit the crime of confidence game. From the judgment and sentence imposed he brings the cause here by writ of error.

The information was in two counts and against three individuals, including defendant, John Schubert and Charles A. Moran. The first count charged that defendants "did unlawfully and feloniously obtain and attempt to obtain from the Traders & General Insurance Company, * * * its money in the amount of one hundred forty eight dollars * * * by means and use of the confidence game." The second count, drawn in conformity with Section 223, chapter 48, '35 C.S.A., charged that defendant and John Schubert and Charles A. Moran conspired to commit the crime of confidence game, a felony. Each defendant entered a plea of not guilty to these counts.

The trial court granted a separate trial to defendants Roll and Moran. The defendant was acquitted by the jury of the charge in the first count and convicted on the second count.

The reporter's transcript in this case embraces over two thousand folios and more than 170 exhibits were introduced in evidence. The trial commenced on November 19, 1952, and was concluded on December 11, 1952. The principal witnesses for the People were James Roberts, a former employee of Spot Auto Body Company, which was owned and controlled by defendant Roll, and John Schubert, Rocky Mountain Branch Manager for Traders & General Insurance Company, a Texas corporation, hereinafter referred to as "Traders."

Defendant Roll was engaged in the garage business and in repairing damaged automobiles. Traders issued policies of insurance on numerous cars, and in some nine instances referred to in the record, Mr. Roll's shop did

the repair work on these damaged cars, and payment was made by Traders under the policies of insurance issued by it on these respective automobiles. In most instances where payment for repair bills was authorized by Traders, the insurance company insisted that bids for the work be submitted by three repair shops. It appears that Roll's shop had estimate blanks for several other automobile repair shops in Denver and the Roll shop made estimates of the repair cost on these forms, each of these estimates being higher than the one submitted by the Roll shop. In his accounts Roll had one called Account No. 1000 in which were entered certain items which witness Roberts testified: "just to put it bluntly, it was more or less a fund to pay off adjusters."

There is competent evidence in the record showing that defendant and Schubert entered into an arrangement whereby the Roll repair shop "padded" its charges and that a part of the overcharge was paid to Schubert. It is apparent from the questions propounded by defendant's counsel that defendant contended these payments were loans to Schubert. Schubert admitted that in some instances he did borrow money from Roll, but that the checks offered in evidence and by him endorsed (some being for "cash") were his division of the overcharge made by Roll's concern for work not actually done on the automobiles repaired.

Defendant did not testify in the case and rested his case immediately after the People's case was completed.

 It is argued that the trial court erred in permitting the district attorney to endorse John Schubert as a witness for the People during the course of the trial, and that the testimony of this witness was improperly admitted because said witness was present in the court room when some of the evidence was introduced, at a time when the court had made a rule for the exclusion of witnesses. It appears that in the first instance the witness, Schubert, also a defendant in the case, had entered a plea of not guilty and apparently during the

progress of the trial of defendant, he changed his plea to "guilty" and applied for probation. He, on December 8, 1952, indicated to the district attorney that he would testify in the case, and upon learning this fact the prosecutor asked that Schubert's name be added to the list of witnesses for the People. In order to safeguard the rights of defendant the trial court, apparently seeking to avoid any surprise on the part of defendant, took the testimony of the witness Schubert in chambers, and observing no prejudice to defendant, allowed Schubert to testify before the jury. At the conclusion of his direct examination, counsel for defendant asked for a mistrial, and also moved for a continuance, in order to enable them to confer with Schubert and prepare for his cross-examination. The motion for a continuance was granted. We are satisfied from a careful examination of this record that the defendant was in nowise prejudiced by the action of the trial court in permitting Schubert to be called as a witness. Under the circumstances disclosed by this record, the trial court did not abuse its discretion in permitting the witness Schubert to be endorsed and to testify. If authority is deemed essential, we refer to *Baker, et al. v. People,* 72 Colo. 207, 210 Pac. 323; *Stone v. People,* 71 Colo. 162, 204 Pac. 897; *Kloberdanz v. People,* 95 Colo. 30, 31 P. (2d) 1111; *Grandbouche v. People,* 104 Colo. 175, 89 P. (2d) 577. The statute governing such matters is section 455, chapter 48, '35 C.S.A.

In the Grandbouche case, supra, we said: "Certainly, counsel for the people could not be expected to endorse her name as a witness until she changed her plea. Even then the likelihood of her willingness to testify, under the circumstances, remained in doubt until her voluntary consent had been given. * * * Under these circumstances, the matter of permitting the endorsement was clearly within the discretion of the trial court, and we find nothing in the record from which we can say that such discretion was abused."

It is here urged that the trial court abused its

**6**

discretion in permitting Schubert to testify because of his presence for a brief time in the courtroom contrary to the exclusion rule entered by the court. He heard no substantial evidence. The record discloses that the district attorney upon learning that Schubert was in the courtroom, went over to him and asked him to leave, and Schubert immediately left the courtroom. It is manifest from the record that Schubert was not present in the courtroom with the knowledge, consent or procurement of the district attorney. The trial court expressly found that both the district attorney and Schubert were without blame in the matter of Schubert's presence in the courtroom. Where the exclusion order has been disobeyed by the consent or procurement of the party seeking to use the witness, the trial court may, in the exercise of a sound discretion, refuse to receive the testimony. *Vickers v. People,* 31 Colo. 491, 73 Pac. 845. We find nothing in this record indicating that the trial court abused its discretion in allowing Schubert to testify.

■ Counsel for defendant contend the evidence is not sufficient to support a conviction on the charge of conspiracy to commit confidence game, because the jury found defendant not guilty of the charge in the first count. The charge of conspiracy to commit confidence game and the charge of confidence game are separate and distinct offenses, separately punishable, and proof of one does not hinge upon proof of the other. The gist of the crime of conspiracy is the unlawful agreement. *Davis v. People,* 22 Colo. 1, 43 Pac. 122; *Short v. People,* 27 Colo. 175, 60 Pac. 350. Here, the evidence discloses an agreement between defendant and Schubert, the agent for the insurance company, to pay repair bills and defraud the Traders Company by gaining its confidence and causing payments to be made on false and bogus bills, estimates and repair orders. It is manifest that it was the intent of defendant and Schubert to deliberately swindle the Traders Company.

In *Pfeiffer v. People,* 106 Colo. 533, 107 P. (2d) 799,

we said: "So peculiar, numerous and diversified are the schemes employed to swindle victims that no statute can specifically cover them, and no accurate definition including all can be framed by the courts." See, also, *Kelly v. People,* 121 Colo. 243, 215 P. (2d) 336; *McBride v. People,* 126 Colo. 277, 248 P. (2d) 725; *Munsell v. People,* 122 Colo. 420, 222 P. (2d) 615. Counsel for defendant cite our opinion in *Olde v. People,* 112 Colo. 15, 145 P. (2d) 100. We there said: " * * * historically in this state the crime of confidence game transpires only when the confidence of the victim first is obtained by some fraudulent scheme, trick or devise and then is breached on obtaining the money or property of the victim. Thus in the Roll case, supra, the confidence of the victim, later violated, was obtained through church affiliations, nursed through fake telephone calls, and in the Powers case initial confidence was studiously developed by the conspirators through the use of false personages and devices.

"The case of *West v. People,* supra, had its inception in a fake horse race, a typical and favorite enterprise of confidence men, wherein the confidence of the unwary victim was obtained by the display and use of the complicated paraphernalia ordinarily attendant to wagering on such contests."

The instant case discloses not only padded bills, but that defendant had in his posession estimate blanks of other reputable repair garages in Denver, which estimates were filled out not by the operators of these concerns, but by defendant or under his direction; submitted to the Traders Company, together with the padded estimate or bill of defendant, so that Traders Company was led to believe that defendant's charge was the lowest obtainable. The facts of this case distinguish it from the Olde case, supra. From this record it cannot be doubted that it was the intent of defendant by deliberate plan, scheme and design to cheat and swindle the insurance

company and that such an agreement was made with Schubert, agent for Traders.

██ This contention was not presented in the trial court in defendant's motion for new trial, neither is it mentioned in the assignments of error, which are general. We have held many times that questions not specifically brought to the attention of the trial court are not properly before this court for consideration. *Perry v. People,* 116 Colo. 440, 181 P. (2d) 439. We have, nevertheless, considered the contention, and under this record find it without merit.

██ ██ Objection was made to the admission of defendant's confession. There was no abuse of the discretion of the trial court in admitting this statement, signed by Mr. Roll. We held in *Downey v. People,* 121 Colo. 307, 215 P. (2d) 892, that the admission of a confession is largely within the discretion of the trial court and on review, its ruling thereon will not be disturbed unless there has been a clear abuse of discretion. See, also, *Bruner v. People,* 113 Colo. 194, 156 P. (2d) 111; *Cahill v. People,* 111 Colo. 29, 137 P. (2d) 673. In *Downey v. People,* supra, we held: "Whenever there is evidence, not sufficient to require exclusion of the· alleged confession, but sufficient to raise a question as to the weight to which it is entitled at the hands of the jury, the court must refer the questions of the voluntarity of the confession to the jury under proper instructions." See, also, *Martz v. People,* 114 Colo. 278, 162 P. (2d) 408. *Roper. v. People,* 116 Colo. 493, 179 P. (2d) 232. An instruction in conformity with this rule was given in this case.

The confession in the instant case was signed by defendant, and he initialed each page thereof. There is testimony in the record, not disputed in any evidence offered before the jury, that no threats or promises were made in order to obtain it. The document contained the following language: "I have read the foregoing statement, consisting of four pages and this is my signature to

it. Everything I said in the statement is true. I understand the questions and I know what my answers were. I was told I did not have to make a statement, and was told that it might be used against me. I made the statements voluntarily, and there were no threats or force used against me, and I was made no promises. No one told me I had to make the statement and I knew fully what I was doing when I made and signed it." This statement, signed by defendant, was supported by the testimony of the witness, Humphreys, who was present at the time the statement was made, and who testified before the jury. The Humphreys testimony was not disputed by any witness.

We have duly considered the other assignments urged for reversal and find them to be without merit. The trial judge properly instructed the jury and in his rulings on evidence demonstrated that he was duly considerate of every right of defendant Roll.

Perceiving no prejudicial error in the record, the judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE HOLLAND not participating.