No. 19,264.

ROBERT ELMER GALLEGOS v. THE PEOPLE OF THE STATE OF COLORADO.
(358 P. [2d] 1028)

Decided December 19, 1960. Rehearing denied January 9, 1961.

54

Mr. CHARLES S. VIGIL, Mr. ROGER CISNEROS, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, to whom we will refer as defendant, was found guilty of first degree murder and sentenced to imprisonment for life. He was charged jointly with one Edward Raymond Martinez. The information, in pertinent part, alleged that the defendant and said Martinez, "did feloniously, wilfully and of their premeditated malice aforethought kill and murder one ROBERT F. SMITH; * * *."

Defendant was fourteen, Martinez was twelve, and the decedent Smith was "over seventy" years of age. The homicide was committed in connection with a robbery allegedly perpetrated by the defendant and Martinez upon the deceased. After the trial court ruled that

a statement made by Martinez was not admissible in evidence the case as to him was dismissed.

Counsel for defendant contend, among numerous other assignments of error, that the information should be quashed for the following reasons:

"1. Two defendants are charged with doing the same act.

"2. No charge that death occurred within a year and a day.

"3. Age of the defendant not stated.

"4. No allegation that offense had occurred during robbery.

"5. No allegation that 14 year old defendant understood difference between good and evil."

WE know of no authority in this or any other jurisdiction which supports any of these contentions. Our attention is not directed to court decisions, to any statute, or to any comment of a text writer which in any respect upholds the position asserted by counsel for defendant. Numerous decisions of this court, and of other jurisdictions, clearly indicate that the information here sufficiently charged the crime for which defendant was convicted.

The evidence received at the trial established that between 8:30 and 9:00 P.M. on December 20, 1958, the defendant and two other boys were shining shoes in the neighborhood of 18th and Curtis streets in Denver. They were not making much money and together they thought of a plan to rob an old man. They followed the deceased to a hotel located at 1229 - 18th street. He entered the hotel and the defendant and one of the other boys followed him inside. The smallest boy (aged 8) stayed outside. The deceased was lost sight of by defendant and his companion and in an effort to locate him they told some of the inmates of the hotel that they were looking for their grandfather who had just come in, and inquired as to the room into which he had gone. An occupant of the room adjoining that of the deceased told the boys

that the old man next door had just come in, and thereupon the boys knocked at the door. The boy with defendant asked Smith for a drink of water and when the old man brought it, he was grabbed and the defendant struck him with a shoe brush. He was knocked to the floor, a knife was held to his throat, he was badly beaten, and his wallet containing $13.00 was taken. The perpetrators of the robbery then left the hotel; all three of the boys ran to the 23rd street viaduct where the money was divided and the victim's billfold and the shoe brush thrown from the bridge.

Smith was taken to the Denver General Hospital. He had a fractured jaw, a knife cut under his chin, and appeared "badly beaten about the face and head." At that time he was conscious. He became progressively worse and by December 24, 1958, had lost consciousness and remained so until his death on January 26, 1959. The medical experts who performed surgery and administered treatment in efforts to save his life, testified that in their opinion the primary cause of death was the brain injury suffered at the time of the robbery. Bronchial pneumonia was said to be a secondary cause of death because in the absence of the brain injury the deceased would have been able to handle the "secretions" which caused the pneumonia.

On the evening of January 1, 1959, defendant and two of his younger brothers were seen by an officer who had been assigned to investigate the robbery of Smith. The officer placed the boys in his automobile where he questioned them. Richard, aged 8, admitted that he and the defendant had a part in the assault upon Smith, and defendant admitted at that time that he had taken part in the robbery. Both boys then told the officer that the third boy, Charles, was not a party to the offense. They said that the boy who was with them when Smith was robbed was their cousin, Edward Raymond Martinez. The officer then took Charles home. Richard and the defendant were placed in Juvenile Hall. The following

day the same officer talked again with defendant who told in detail how he, Richard, and the Martinez boy had followed the "old man" to the hotel; how Richard had "stayed downstairs and watched for cops"; how they lost sight of their "old man" and asked some people if they had seen their grandfather; how they were directed to the room occupied by Smith and how they entered his room and robbed him.

The officer's testimony concerning the statement made by Robert on the day following his arrest included, inter alia, the following:

" * * * He said upon knocking on the door someone told him to come in, that he opened the door and he seen it was the man he was looking for. He said at that time Eddie Martinez asked the old man for a drink of water and when the old man brought the water, Eddie grabbed him and he, Robert, hit the old man about the head and face with a shoe brush; that when the old man fell to the floor he took a knife and held it at the old man's throat and took his billfold out of his back pocket."

January 7, 1959, defendant was taken from Juvenile Hall to police headquarters where he was questioned in the presence of a stenographer before whom questions were asked and answers given. He was then returned to Juvenile Hall. The typewritten questions and answers were thereafter taken to Juvenile Hall where defendant read them aloud to his eight-year-old brother Richard, and his cousin (the Martinez boy). The statement was signed by defendant and the Martinez boy.

Following a hearing out of the presence of the jury, the court ruled that the statement as related to defendant was competent. It was not actually placed before the jury, but the pertinent statements made by defendant were read into the record as follows:

"Questioning directed by Sergeant C. W. Miller to Robert Gallegos:

"Q. What is your name? A. Robert Gallegos. Q. How

58

old are you? A. 14. Q. When were you born? A. 1944. Q. Give me the complete birth date? A. 1944, March 25th. Q. Where do you live? A. 2654 Stout. Q. All right, at this time, Robert, I call your attention to Case No. 290463, wherein one Robert F. Smith of 1229 - 18th Street, City and County of Denver, Colorado, was the victim of an aggravated robbery. This robbery offense took place in Apartment No. 45, at 1229 - 18th Street. This said offense occurred between 8:30 p.m. December 20, 1958, and 9:00 p.m. December 20, 1958. Now, I'll ask you, Robert, if you know anything about this assault and robbery. Just tell me in your own words. A. All of us three was shining shoes, and we wasn't making much money, and when we were coming Eddie thought of getting the old man's money. Q. You three were shining shoes and not making too much money, is that correct, and you say Eddie Martinez thought of a plan to rob an old man, is that correct? A. Yes. Then we saw this man. He was sort of a drunk. We thought he had some money, so we followed him up to this room. Q. You followed him to his hotel room? A. Yes. Q. That was 1229 - 18th Street, Apartment 45? A. Yes. When we went inside, we knocked on the door. Q. Who is 'we'? A. Me and Eddie. And we said, 'Can we have a glass of water?', and as soon as he went to get the water, Eddie grabbed him, and I hit him. Q. What did you hit him with? A. I had a suede brush. Q. Suede shoe shining brush? A. Yes. Then he hit the bed, then fell to the floor. We took his money, his wallet, in his back pocket. As soon as we took the money, Eddie said 'Let's cut out.' We ran down stairs and down by the bridge, so we split it up three ways. I got $3. Q. You say you split this money up down by a bridge? A. 23rd bridge. Q. The 23rd Street viaduct, is that right? A. Yes. Q. Where was Richard during this assault? A. Downstairs. Q. Why was he downstairs? A. Watching if any cops come. Q. He was serving as a lookout? A. Yes."

The signature of Robert Elmer Gallegos appears on page 5. The following also appears:

"I certify I have read the above statement and have signed it and the signature thereon is mine and this statement is entirely true. The statement was made voluntarily after I was duly warned by Sergeant Miller that it could and may be used against me in court. There were no promises made to me or threats made against me in obtaining this statement.

"The signature of Robert Elmer Gallegos then appears in writing."

Counsel for defendant objected to the admission of the oral and written confessions on the ground that they were not voluntary, and upon the further ground that the use of said confessions was prohibited by the terms of C.R.S. '53, 22-8-1(3). As related to this statute, hereinafter considered, it is pertinent to point out that prior to the death of Smith defendant was sentenced to the Industrial School in proceedings in delinquency filed in the juvenile court based on the robbery of Smith.

Defendant did not testify at the trial of the case except for his appearance in the absence of the jury in proceedings before the trial judge in which the court considered the question of whether the confessions were voluntary. Defendant there testified that he signed his name to the written confession "because he [the detective] said whether we told the truth or didn't tell the truth he was going to send us to the Industrial School." The following is taken from the transcript of defendant's testimony:

"THE COURT: Did he threaten you? THE WITNESS: No, sir. Q. Did he just ask the questions and you have the answers? A. Yes, sir. Q. He didn't threaten you in any way? A. No, sir. Q. Did he beat you in any way? A. No, sir. Q. And he just asked the questions and you gave the answers? A. Yes, sir.

\*   \*   \*

"Q. These answers right here [indicating] Exhibit D,

that you gave Detective Miller, what was the reason you gave those answers? A. I was scared that if we didn't do it they would keep us in security longer. Q. How long had you been in security then? A. Five days. Q. You had been in security five days. While you are in security you are kept in solitary confinement, is that right? A. Yes. Q. And you were afraid of that? A. Yes, sir.

"MR. VIGIL: That is all."

Defendant admitted, however, that he was not told by any investigating officer that they intended to keep him "in security."

We first consider the objections to the admission of evidence based upon the provisions of C.R.S. '53, 22-8-1 (3), which in pertinent part reads as follows:

"A disposition of any child under this article, or any evidence given in any such case, shall not in any criminal or other cause or proceeding whatever be lawful or proper evidence against such child for any purpose excepting in subsequent cases against the same child under this article. * * * "

It is undisputed that in the delinquency proceedings disposed of in the juvenile court the same evidence was offered to establish the robbery committed by defendant upon the person of the deceased which was presented in connection with the prosecution for murder. The position of counsel for defendant is that the statute above quoted prevents the introduction of any evidence in the murder case which also formed the basis of testimony considered in the juvenile court. This question was raised in numerous ways but no good purpose would be served by referring specifically to the different approaches under which the issue is presented.

We are unable to agree with the contention of counsel for defendant. It is asserted that because of the language of the statute above quoted:

"The District Court could not have considered the same evidence in the murder trial that was presented in the Juvenile Court. No Colorado cases have specifically

considered this point. But the statute seems so clear that we are at a loss to see how the District Attorney or the Trial Court could have failed to read it to foreclose the District Attorney in using the same evidence in the District Court that had already been used in the Juvenile Court. * * * The same statute appears in Illinois and many other states but no case directly in point has been found; probably because the statute is so clear that no other construction is available, and also, the view of the courts has been, elsewhere at least, that we must guide and protect minor children and that is the reason for such statutes."

▉ Contrary to the contention of counsel we hold the statute to mean that a transcript of the testimony given by any witness, including the defendant, in a proceeding before the juvenile court cannot be used in any manner in a subsequent action against the child alleged to be a delinquent in the juvenile proceeding. Nor can any evidence be admitted as to what a witness said in the juvenile court hearing. There is nothing in the statute to prevent the district attorney from establishing the same facts by the same witnesses and by the same real and documentary evidence that may have been used in the earlier proceeding in the juvenile court. It is only the evidence *as introduced at the hearing in the juvenile court* which cannot be used against said child in subsequent court proceedings. *Ex Parte Walters,* 92 Okla. Cr. 1, 221 P. (2d) 659.

▉ The reasons for the statute are well stated in *Commonwealth v. Myers,* 393 Pa. 224, 144 A. (2d) 367, and in Volume 3, Wigmore on Evidence, section 1040. As there stated, these reasons are consistent with the interpretation we give the statute and inconsistent with the contention of counsel for defendant. It is not the purpose of the statute to foreclose from all future revelation the facts relating to conduct which formed the basis of a prior delinquency proceeding in the juvenile court. When oral testimony is offered for its intrinsic value

62

with relation to the issue to be tried — rather than to establish what was said or done in proceedings before the juvenile court — the statute does not prevent the giving of testimony because the same witness was previously called upon to give evidence relating to the same transaction in juvenile court proceedings. For a comparable example involving the federal rule which prevents disclosure of proceedings before a grand jury, see *United States v. Interstate Dress Carriers, Inc.,* U.S.C.C. 2nd Circuit, 280 Fed. (2d) 52.

We next consider the assignments of error based upon the broad ground that the trial court erred in admitting the confessions made by defendant. These assignments relate to the asserted inability of a fourteen-year-old boy to make a voluntary confession; to the asserted failure of the arresting officer to warn him that any statement he might make could be used against him; to the fear of the defendant that he would be kept "in security" unless he signed the confession of January 7th; to the admitted fact that defendant was not provided with the advice of an attorney or his parents; and that the confessions of defendant were not corroborated by other evidence, and standing alone were not sufficient to sustain a conviction.

We think it a sufficient answer to these contentions to direct attention to the following excerpts from opinions of this court:

"The mere fact that the confession was elicited by questions, is not sufficient to render it inadmissible. The questions were not of a character, or propounded under circumstances and in a manner either to coerce or persuade. * * *

" * * * We do not understand that it is the duty of a police officer to caution a prisoner as to the consequences of making a statement which is voluntary, but merely to refrain from inducing him to make one. * * * " *Reagan v. People,* 49 Colo. 316, 112 Pac. 785.

"This court, on repeated occasions, has said that, to be

admissible, a confession must be voluntary, and that the question of admissibility is for the court. (Citing numerous cases) * * * The jury, of course, is not permitted to pass upon the question of admissibility. The court having admitted the confession in evidence, it is for the jury to determine the weight to which it is entitled. The jury may accord to it great weight, little weight, or no weight at all, depending upon the circumstances surrounding the making of the confession. * * *." *Osborn v. People,* 83 Colo. 4, 262 Pac. 892.

"If it be true that the fundamental ground of the rule against receiving confessions induced by threats or promises is that the credibility of the confession is destroyed, then the test should be whether the inducement was sufficient to persuade one like the accused to confess falsely. * * * " *Buschy v. People,* 73 Colo. 472, 216 Pac. 519.

From 20 Amer. Jur. 447, we quote the following:

"A confession is not inadmissible merely because the person making it is a minor if he is of such age and intelligence as to understand the nature and consequences of his confession, but his age in connection with other facts may render his confession inadmissible. In the absence of a statute providing otherwise, the voluntary confession of an infant fourteen years of age is prima facie admissible in evidence against him upon the trial. The same rule will be applied to a confession by an infant under fourteen if he is capable of committing a crime, for the reason that if he has such mental capacity as to render him amenable to the law for the commission of a crime, he has sufficient mental capacity to make a confession of guilt. * * * "

We cannot say as a matter of law that the court committed error in admitting the oral and written confessions of defendant. The jurors were properly instructed with reference to their right to accord such weight thereto as all the facts and circumstances indicated to them to be proper.

We have considered all the other assignments of error made by counsel for defendant and find them to be without merit. They involve no new legal problem and it would only lengthen this opinion to mention them in greater detail, and to do so would not add to or qualify legal principles which are already well established in the law.

Much of what has been argued in this court might carry substantial weight if presented in connection with an application to the Governor for commutation of sentence or other relief by way of executive clemency. It is not the function of this court to reverse a judgment entered in a criminal case following a trial conducted, in all material respects, in harmony with the legal principles applicable thereto, even though as a result of said trial a fourteen-year-old boy is sentenced to imprisonment for life. The defendant had a fair trial under the applicable legal principles. It is our duty to affirm the judgment, and it accordingly is affirmed.