No. 24839

**The People of the State of Colorado v. Daniel Ortega**

(508 P.2d 784)

Decided April 16, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, E. Ronald Beeks, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, J. D. MarFarlane, Chief Deputy, T. Michael Dutton, Deputy, for defendant-appellant.

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Defendant, Daniel Ortega, appeals from his conviction for forgery, C.R.S. 1963, 40-6-1. He will be referred to by name or as defendant.

On January 13, 1970, defendant and one Lucero were arrested on narcotics charges. They were taken to the police station where an inventory search was conducted. Drugs found on defendant's person were determined to be prescription drugs, which were returned to defendant. A plastic bag which Lucero had attempted to conceal at the time of the arrest was subsequently found to contain hypodermic needles and Preludin, a dangerous but not

narcotic drug. A Standard Oil credit card belonging to a Lester Fly was also found on Lucero's person.

On the following day, while still incarcerated for "investigation of illegal use of narcotics," defendant was photographed. This photograph, along with others, was shown to a service station attendant who identified Ortega from the photograph as having used the Standard Oil credit card taken from Lucero to purchase gasoline. No attorney was present at this photo identification. On the next day, defendant was charged with the crime of forgery in violation of C.R.S. 1963, 40-6-1. Defendant entered a plea of not guilty to this charge.

Prior to trial, the trial judge sustained defendant's motion to suppress the Standard Oil credit card on the basis that the card was improperly seized as the result of a search for evidence of a crime unrelated to the crime for which the defendant was arrested. Defendant's motion for suppression of the invoice signed by defendant in purchasing the gasoline, as well as the testimony of other witnesses, was denied.

At trial, the service station attendant made an in-court identification of defendant as the person who purchased the gasoline using the Standard Oil credit card. The invoice from this transaction was allowed into evidence. Throughout the trial, numerous references were made to the credit card which had previously been suppressed. At the conclusion of the trial, the jury returned a verdict of guilty.

On appeal, defendant contends the trial court erred on four different grounds: (1) in allowing testimony concerning out-of-court photographic identification and allowing in-court identification of the defendant; (2) in refusing to suppress the invoice signed by defendant and references made by various witnesses to the previously suppressed credit card; (3) in failing to define for the jury the term "specific intent," which was part of a necessary element of the crime of forgery, and (4) in failing to deny defendant's motion to dismiss on the grounds that defendant should have been charged under the misuse of credit devices statute, C.R.S. 1963, 40-14-21, rather than the more general forgery statute.

No claim is made that there was no probable cause for the original arrest.

We do not agree with defendant's contentions and therefore affirm the judgment of the trial court.

I.

Initially, defendant contends that the admission of testimony speaking to the out-of-court photographic lineup and the in-court identification of defendant by the service station attendant constituted reversible error. At the time the original photographic identification was made, the defendant was in custody and a prime suspect in the forgery investigation. Defendant does not claim that the identification procedure was so unnecessarily suggestive and conducive to mistaken identification that he was denied due process of law. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Rather, he claims that the photographic lineup, made while the defendant was in custody but not formally indicted, was a "critical stage" of the criminal process, as this concept was developed in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and thus, the presence of counsel was constitutionally required. Therefore, defendant argues, reversible error predicated on this previous counselless photo identification occurred in two different facets of the jury trial: first, the trial court failed to establish by clear and convincing evidence that the in-court identification made by the service station attendant was independent of the prior photographic identification, in accordance with the standards set forth in *Wade, supra,* and secondly, that the previous photographic identification of defendant fell within the ambit of the *per se* exclusionary rule developed by *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

■ We do not agree with defendant. We held in *Brown v. People,* 177 Colo. 397, 494 P.2d 587, and reiterated in *People v. Barker,* 180 Colo. 28, 501 P.2d 1041, that there is no right to counsel at photographic identifications, particularly prior to the filing of a formal charge. We note that certiorari has been granted by the Supreme Court in one

228

case which held that counsel was so required after defendant had been taken into custody, *United States v. Ash,* 461 F.2d 92, *cert. granted,* 407 U.S. 909, 92 S.Ct. 2436, 32 L.Ed.2d 682.. The weight of authority, however, has rejected such a requirement, and we reiterate that we will not retreat from the position we took in *Brown, supra,* and *Barker, supra. See, e.g., United States v. Williams,* 436 F.2d 1166; *United States v. Bennett,* 409 F.2d 888.

We are aware of the potential for abuse which is possible under the rule we have enunciated in *Brown* and *Barker, supra.* Defendant has argued that by arbitrarily establishing the filing of formal charges as the time at which *any* right to counsel attaches, the police and prosecuting attorney may manipulate the time when such formal charges are filed to avoid the presence of counsel. *See People v. Fowler,* 1 Cal.3d 335, 461 P.2d 643, 82 Cal. Rptr. 363. Secondly, several courts have expressed the fear that by not requiring counsel at photographic identifications, law enforcement officers would substitute photographic identifications for the traditional corporeal lineup to eliminate the necessity of counsel. *See People v. Lawrence,* 4 Cal.3d 273, 481 P.2d 212, 93 Cal. Rptr. 204; *United States v. Ash, supra.* However, absent a showing on the part of defendant that law enforcement officers acted in bad faith or improperly conducted the photographic identification, we cannot presume that these officers acted so as to subvert any mandate requiring the presence of counsel. In this case, no such showing has been made nor alleged by defense counsel. The photographic identification was made on the day following defendant's arrest, and formal charges were filed the next day; no purposeful delay in filing charges appears from the record.

Therefore, the trial court did not err in its admission of the in-court identification or the testimony going to the photographic identification.

II.

Secondly, defendant contends that the trial court erred in allowing into evidence the invoice signed by

defendant when he used the Standard Oil credit card and various references made by the People's witnesses to the previously suppressed credit card. Defendant argues that the invoice and testimony regarding the credit card were the result of an illegal seizure of the credit card, and therefore, such evidence should have been excluded under the "fruits of the poisonous tree" doctrine, *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. The People argue that, as the credit card was originally taken from the person of Lucero, rather than Ortega, defendant has no standing to contest the legality of the seizure of the card nor the admission of evidence which defendant claims was the "fruit" of the initial seizure. Regardless of whether defendant was a "person aggrieved" by the original seizure, as Crim. P. 41(e) requires, his contention has no merit. The credit card was found on Lucero's person during the course of an inventory search subsequent to a valid arrest.

We have consistently held that an officer conducting a reasonable search, incident to a valid arrest, may seize contraband or articles, the possession of which gives the police officer reason to believe a crime has been committed, even though such articles do not relate to the crime for which the defendant was initially arrested. *People v. Glaubman,* 175 Colo. 41, 485 P.2d 711; *People v. Baca,* 160 Colo. 477, 418 P.2d 182. This is particularly true of an inventory search at a police station; such searches are an integral part of efficient police procedure. *See, e.g., Charles v. United States,* 278 F.2d 386.

Defendant also argues that the credit card and its fruits should have been suppressed on the theory that the incarceration of defendant and Lucero, resulting in the seizure of the credit card, was illegal. Defendant contends that as he and Lucero were booked for "investigation of illegal use of narcotics," not a legally defined crime, the subsequent incarceration was unlawful.

"Booking," however, is a ministerial function, and a technical irregularity in that process alone will not deny defendant due process. *People v. Duke,* 276 Cal. App.2d 630,

81 Cal. Rptr. 69. The police record or booking is not the charge on which defendant goes to trial and has no significance after a formal charge has been lodged. *State v. Thompson,* 58 Wash.2d 598, 364 P.2d 527, *cert. denied,* 370 U.S. 945, 82 S.Ct. 1590, 8 L.Ed.2d 811, *reh. denied,* 371 U.S. 855, 83 S.Ct. 50, 9 L.Ed.2d 94. In this case, the officers had probable cause to arrest defendant and Lucero for illegal use of narcotics; defendant's detention was reasonable, as formal charges were filed against him within two days after his arrest and within twenty-four hours from the time when he became the prime suspect in the forgery case. Thus, this claim has no merit.

### III.

■ Defendant next contends that since the crime of forgery requires the specific intent to defraud, the court erred in not defining the term "specific intent" for the jury. The court advised the jury that in order to convict they must find that the defendant had specific intent to damage and defraud the victim. The requirement necessary to sustain conviction was in plain understandable English. To further define it would be to ". . . paint the lily . . . [and be] wasteful and ridiculous excess." See Shakespeare, King John IV ii. There was no error in the instructions submitted to the jury. *See Quintana v. People,* 178 Colo. 213, 496 P.2d 1009.

■ Lastly, defendant contends that the trial court erred in denying defendant's motion to dismiss on the ground that defendant should have been charged under the more specific fraudulent use of credit devices statute, C.R.S. 1963, 40-14-21, rather than the more general forgery statute. *People v. James,* 178 Colo. 401, 497 P.2d 1256, is contrary to defendant's position and is dispositive of the issue. *See* also *Hucal v. People,* 176 Colo. 529, 493 P.2d 23.

The judgment is affirmed.