Cheryl L. KWIATKOSKI, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 83SC271.

Supreme Court of Colorado,
En Banc.

Sept. 30, 1985.

As Modified on Denial of Rehearing
Oct. 15, 1985.

David F. Vela, State Public Defender,
Jody Sorenson Theis, Deputy State Public
Defender, Denver, for petitioner.

1. § 18–4–203, 8 C.R.S. (1973 & 1984 Supp.).

2. § 18–4–204, 8 C.R.S. (1973 & 1984 Supp.).

Duane Woodard, Atty. Gen., Charles B.
Howe, Deputy Atty. Gen., Richard H. For-
man, Sol. Gen., Laura Udis, Asst. Atty.
Gen., Denver, for respondent.

KIRSHBAUM, Justice.

The defendant, Cheryl L. Kwiatkoski, ap-
pealed her conviction of second degree bur-
glary,[1] third degree burglary,[2] and theft[3]
to the Court of Appeals on the ground that
the trial court erroneously refused to in-
struct the jury on the definition of the term
"voluntary." The Court of Appeals af-
firmed, holding that the word voluntary is
not so unusual or unfamiliar as to require
further elaboration. *People v. Kwiatkoski*,
671 P.2d 982 (Colo.App.1983). We granted
certiorari to review the decision of the
Court of Appeals, and now affirm.

The evidence at trial established that the
defendant made five written and oral state-
ments to one of her supervisors and to a
security consultant acknowledging that she
took money from her employer's safe with-
out authorization. Prior to trial, the de-
fendant moved to suppress these state-
ments on the ground that they were invol-
untary. The trial court conducted an *in
camera* hearing and denied the motion,
concluding that the statements were made
voluntarily. This ruling has not been ap-
pealed. At trial, the defendant testified
that she did not commit the offense, but
was pressured into confessing by threats
and promises made by the security consult-
ant.

At the conclusion of all the evidence, the
defendant tendered the following instruc-
tion to the trial court on the issue of the
voluntariness of her statements:

Statements are not voluntary if they
are extracted by any sort of threat or
violence, or obtained by any direct or

3. § 18–4–401, 8 C.R.S. (1973 & 1984 Supp.).

implied promises, however slight, or by the exertion of any improper influence.

The trial court rejected this tendered instruction and instead instructed the jury as follows:

> The burden is upon the prosecution to prove, beyond a reasonable doubt, that any out-of-court statements made by the defendant were voluntary. If you believe from all the evidence in this case statements alleged to have been made by the defendant were not voluntary, or if you entertain a reasonable doubt on this point, you should disregard the statements entirely.

The defendant argues here, as she did before the Court of Appeals, that the trial court's failure to define specifically the word "voluntary" constitutes reversible error.[4] We disagree.

It is well-established that the due process clauses of the United States and Colorado Constitutions prohibit the use of involuntary confessions as evidence. *E.g., Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); *People v. Freeman*, 668 P.2d 1371 (Colo. 1983); *Hunter v. People*, 655 P.2d 374 (Colo.1982). It matters not whether the involuntary statement is made to a private citizen rather than to a police officer. *People v. Amato*, 631 P.2d 1172 (Colo.App. 1981).

A defendant who seeks to prohibit the prosecution from introducing an allegedly involuntary confession into evidence is entitled to a judicial determination in advance of the trial of whether the statement is in fact involuntary and therefore inadmissible as evidence against the defendant. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

---

**4.** The defendant and the People take contrasting positions with respect to the role of the jury in considering confessions admitted into evidence. When a trial court concludes that a confession is voluntary and, therefore, is admissible as evidence against the defendant, a question arises concerning the jury's role in considering that particular evidentiary item: should the jury independently assess the "voluntariness" of the confession, or should the jury merely consider whether the content of the confession is true? Courts have in general adopted one of two basic rules for resolving this question: the "orthodox" rule, which informs the jury that it should treat the confession like any other item of evidence by evaluating its weight, and the "Massachusetts" rule, which expressly authorizes the jury to make an independent assessment of the "voluntariness" of the confession. *See Jackson v. Denno*, 378 U.S. 368, 401, 410, 84 S.Ct. 1774, 1793–94, 1798–99, 12 L.Ed.2d 908 (Black, J., dissenting and concurring in part) (Appendix A). The People's brief asserts that Colorado follows the "orthodox" rule; the defendant's brief states that Colorado follows the "Massachusetts" rule. Prior decisions of this court contain statements which arguably support both positions. *Compare People v. Shearer*, 181 Colo. 237, 508 P.2d 1249 (1973); *Sackett v. People*, 176 Colo. 18, 488 P.2d 885 (1971); *Lauderdale v. People*, 162 Colo. 36, 424 P.2d 373 (1967); *Gallegos v. People*, 145 Colo. 53, 358 P.2d 1028 (1960), *rev'd on other grounds*, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962); *Osborn v. People*, 83 Colo. 4, 262 P. 892 (1927); *Fincher v. People*, 26 Colo. 169, 56 P. 902 (1899); *with People v. Callis*, 692 P.2d 1045 (Colo.1984); *Reed v. People*, 174 Colo. 43, 482 P.2d 110 (1971); *Feldstein v. People*, 159 Colo. 107, 410 P.2d 188 (1966); *Martz v. People*, 114 Colo. 278, 162 P.2d 408 (1945); *Bruner v. People*, 113 Colo. 194, 156 P.2d 111 (1945). *See also Compton v. People*, 166 Colo. 419, 425, 444 P.2d 263, 266 (1968) ("The fact that the jury thereafter determines the weight to be given a confession, or as is sometimes the practice, the fact that the issue as to the voluntariness of a confession ... is also submitted to the jury...."); *Roll v. People*, 132 Colo. 1, 284 P.2d 665 (1955) (evidence raising a question as to the weight to which a confession is entitled is submitted to jury for a determination on voluntariness); *Read v. People*, 122 Colo. 308, 221 P.2d 1070 (1950) (court states both that admission of confession is solely the duty of trial court and that where a conflict in the evidence exists, it is proper to instruct jury that it may disregard confession if it does not believe it was voluntary); *Downey v. People*, 121 Colo. 307, 215 P.2d 892 (1950) (whenever there is evidence sufficient to raise a question as to the *weight* to which a confession is entitled at the hands of the jury, the court must refer the question of the *voluntariness* of the confession to the jury); *Roper v. People*, 116 Colo. 493, 179 P.2d 232 (1947) (quotes from both *Bruner* and *Osborn*). This question was not presented to the trial court or to the Court of Appeals, and will not be answered here.

When determining whether a confession is voluntary or involuntary, a trial court must consider the totality of the circumstances surrounding the making of the statement. *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *People v. Cummings,* 706 P.2d 766 (Colo.1985); *People v. Raffaelli,* 647 P.2d 230 (Colo.1982). In *Culombe,* the Supreme Court articulated the following guidelines for determining whether a confession is voluntary:

> Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.... The line of distinction is that at which governing self-direction is lost and compulsion, of what ever nature or however infused, propels or helps to propel the confession.

367 U.S. at 602, 81 S.Ct. at 1879 (citation omitted); *accord Schneckloth v. Bustamonte,* 412 U.S. 218, 225–26, 93 S.Ct. 2041, 2046–47, 36 L.Ed.2d 854 (1973). In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the Supreme Court suggested the following circumstances in which a confession would *not* be considered voluntary:

> A confession ... must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.[5]

*Id.* at 753, 90 S.Ct. at 1471 (quoting *Bram v. United States,* 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897)).

This court has on several occasions noted this comment in reviewing trial court determinations of the voluntariness of confessions. *See, e.g., People v. Freeman,* 668 P.2d 1371 (Colo.1983); *People v. Quintana,* 198 Colo. 461, 464, 601 P.2d 350, 351 (1979). However, these statements tend to describe the concept of voluntariness rather than to define the meaning of the word "voluntary." The term "voluntary" is defined by Webster's Dictionary as follows: "given of one's own free will ... actions of oneself not constrained, impelled or influenced by another ... done by design or intention, not accidental ... freedom from any compulsion that could constrain one's choice ... the control of will...." *Webster's Third New International Dictionary,* 2564 (1976). The same concepts are present in both judicial descriptions and dictionary definitions of the word: the exercise of free will, unconstrained by external intimidation or encouragement that might influence the declarant's decision to speak. Thus, the general understanding of the word, as reflected by its dictionary definition, is clear and needs no further definition. *See People v. Deadmond,* 683 P.2d 763 (Colo.1984); *Ogden v. State,* 96 Nev. 258, 264, 607 P.2d 576, 580 (1980).

Indeed, any effort to articulate a precise definition might unduly restrict the jury in its consideration of the voluntariness of a confession.[6] As the Court noted in *Culombe:*

> It is impossible for this Court, in enforcing the Fourteenth Amendment, to attempt precisely to delimit, or to surround with specific, all-inclusive restrictions, the power of interrogation allowed to state law enforcement officers in obtaining confessions. No single litmus-paper

---

**5.** This statement is nearly identical to petitioner's rejected jury instruction.

**6.** Courts have not attempted to define the term "voluntary." Some courts have used the *Brady* definition of what is not voluntary. In connection therewith, or as a separate alternative, other courts have used the *Culombe* totality of the circumstances test. We note that in this case the defendant's tendered instruction did not of-

fer a definition of the word "voluntary," but of what is *not* a voluntary confession. While the tendered instruction contained a correct statement of the law, the giving thereof would not have corrected what the defendant asserts on appeal to have been error—the failure of the trial court to specifically define the term "voluntary."

test for constitutionally impermissible interrogation has been evolved....

367 U.S. at 601, 81 S.Ct. at 1878. In a similar vein, the Supreme Court described the difficulties presented in defining "voluntary" in *Schneckloth:*

> Those cases yield no talismanic definition of "voluntariness," mechanically applicable to the host of situations where the question has arisen. "The notion of voluntariness," Mr. Justice Frankfurter once wrote, "is itself an amphibian." *Culombe v. Connecticut,* 367 U.S. 568, 604–605 [81 S.Ct. 1860, 1880–81, 6 L.Ed.2d 1037]. It cannot be taken literally to mean a "knowing" choice. "Except where a person is unconscious or drugged or otherwise lacks capacity for conscious choice, all incriminating statements—even those made under brutal treatment—are 'voluntary' in the sense of representing a choice of alternatives. On the other hand, if 'voluntariness' incorporates notions of 'but-for' cause, the question should be whether the statement would have been made even absent inquiry or other official action. Under such a test, virtually no statement would be voluntary because very few people give incriminating statements in the absence of official action of some kind." It is thus evident that neither linguistics nor epistemology will provide a ready definition of the meaning of "voluntariness."

412 U.S. at 224, 93 S.Ct. at 2046 (quoting Bator & Vorenberg, *Arrest, Detention, Interrogation and The Right to Counsel: Basic Problems and Possible Legislative Solutions,* 66 Col.L.Rev. 62, 72–73 (1966)). In view of the plain and understood meaning of the word "voluntary," we conclude, as did the Court of Appeals, that the trial court did not err by failing to provide the jury with a precise definition of the term.

The judgment of the Court of Appeals is affirmed.

ERICKSON, J., concurs in the result.

QUINN, C.J., dissents and LOHR and NEIGHBORS, JJ., join in the dissent.

ERICKSON, Justice, concurring in the result:

I respectfully concur in the result.

After an *in camera* hearing, the trial judge denied the defendant's motion to suppress and concluded that the defendant's statements were made voluntarily. No appeal was taken from the trial judge's finding at the *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing.

The sole issue on appeal is whether the trial judge erred in refusing to instruct the jury on the definition of the term "voluntary." I agree with Judge Smith's opinion and his statement that "[t]he word voluntary is not so unusual or unfamiliar as to require elaboration." *People v. Kwiatkoski,* 671 P.2d 982, 983 (Colo.App.1983).

We said in *People v. Deadmond,* 683 P.2d 763 (Colo.1984), in addressing the failure of the court to instruct the jury as to the definition of voluntary when no request was made for an instruction:

> [W]e find no reversible error here in the trial court's failure to define the word "voluntary" in the absence of a specific request for such instruction.... The word, while imprecise, is one with which reasonable persons of common intelligence would be familiar, and its meaning is not so technical or mysterious as to create confusion in jurors' minds as to its meaning. *See People v. Ortega,* 181 Colo. 223, 508 P.2d 784 (1973); *Simms v. People,* 174 Colo. 85, 482 P.2d 974 (1971).

*Id.* at 769.

In my view, the failure to give the proferred instruction was not reversible error.

QUINN, Chief Justice, dissenting:

I dissent because, in my view, the trial court erred by refusing to give the defendant's tendered instruction or a similar one defining the term "voluntary" in a context of a confession allegedly induced by threats or promises. The majority concludes that "any effort to articulate a precise definition might unduly restrict the

jury in its consideration of the voluntariness of a confession." Majority opinion at 409. It is precisely because the term "voluntary" is so amorphous, however, that further specification of its meaning is necessary if the jury is to perform its proper function under the law.

In order to pass constitutional muster, a confession must be voluntary. The ultimate test of voluntariness is whether the statement is a product of a rational intellect and a free will. *E.g., Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *People v. Connelly,* 702 P.2d 722 (Colo. 1985); *People v. Raffaelli,* 647 P.2d 230 (Colo.1982); *Hunter v. People,* 655 P.2d 374 (Colo.1982). More specifically, a confession is not voluntary if it is extracted by any sort of threat, promise, or by the exertion of any improper influence. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *People v. Parada,* 188 Colo. 230, 533 P.2d 1121 (1975); *People v. Pineda,* 182 Colo. 385, 513 P.2d 452 (1973). Other courts have held that when a confession is admitted into evidence, the trial court should correctly instruct the jury on the meaning of voluntariness. *E.g., Leonard v. United States,* 278 F.2d 418 (9th Cir.1960); *Bellamy v. State,* 435 A.2d 821 (Md.App.1981); *State v. Bridges,* 491 S.W.2d 543 (Mo.1973).

Unless the court informs the jury that a confession induced by a threat or promise is involuntary, the jury is invited to devise its own standard of voluntariness. That standard is limited only by the imagination of each juror and could easily encompass statements consciously given notwithstanding the fact that they were extracted by a threat or promise.[1] The application of such a standard, however, would clearly contravene the constitutional standard of voluntariness in the context of a confession.

The defendant in this case testified that her confession was induced by the threat and promise of the security consultant. The court, therefore, should have specifically instructed the jury, as requested by the defendant, that if they found the confession was so induced, such confession would not be voluntary and should be disregarded. The failure to give such an instruction was error.

I am authorized to say that Justice LOHR and Justice NEIGHBORS join in this dissent.

---

1. The Colorado Criminal Code, for example, defines a "voluntary act" as "an act performed consciously as a result of effort or determination." § 18–1–501(9), 8 C.R.S. (1978). Similarly, Webster's Dictionary, relied on by the majority, includes as one of the definitions of the term "done by design or intention, not accidental." *Webster's Third International Dictionary,* 2564 (1976). Under these definitions, a confession obtained as a result of a threat or promise could still be viewed as "an act performed consciously as a result of effort or determination" or, for that matter, an act "done by design or intention." Moreover, *Black's Law Dictionary* (5th ed. 1979) defines a voluntary confession as "one made spontaneously by a person accused of crime, free from influence of any extraneous disturbing cause, and in particular, not influenced, or extorted by violence, threats, or promises." *Id.* at 269. The legal definition of a "voluntary confession" is thus substantially different from the definition of "voluntary act" in section 18–1–501(9) and the definition of "voluntary" in Webster's Dictionary.